## ISABELLA BRIGINS ET AL. *v.* D. W. CHANDLER.

1. TAX-SALE. *Subsequent execution and dating of deed. Time of sale, how proved.*
   Where land is sold for taxes on the day prescribed by law for such sales, the title of the purchaser is not affected by the fact that the deed was executed on a subsequent day, and dated on the day of its execution; and a recital in the deed that the sale was made on the day of the date of the deed does not preclude the party claiming title thereunder from showing *aliunde* that the sale was made at the proper time.

2. TAXES. *Assessment in 1871. Effect of unnecessary action of supervisors under Code.*
   Where a valid assessment of lands, made in 1871, was completed before the revenue chapter of the Code of 1871 took effect, any subsequent action of the Board of Supervisors with respect to the assessment-roll, under the mistaken view that it was required by that chapter, could not impair the validity of such assessment so far as concerned any person not wronged or injured by such unnecessary action.

3. SAME. *Assessment. Proviso to sect. 1675, Code 1871.*
   By the proviso to sect. 1675 of the Code of 1871 the operation of the revenue chapter contained in that Code was suspended as to the assessment of lands until 1875.

4. SAME. *Assessment. Roll delivered, but not filed.*
   It was not necessary to the validity of an assessment made in 1871, under the laws then in force, that the roll should have been actually filed, if it was, in fact, delivered to the clerk of the Chancery Court at the proper time.

5. SAME. *Levy thereof. Special meeting of supervisors. Presumption.*
   Where it appears that the taxes of a particular county were levied at a special meeting of the Board of Supervisors, it is presumed, in the absence of any showing to the contrary that the meeting was rightfully held, such meetings being authorized by law.

6. SAME.   *Levy, when to be made.   Codes of 1857 and 1871.*

Art. XXIV. on page 418 of the Code of 1857, continued in force by an act approved July 9, 1870, prescribed the second Monday in October as the day for the levying of county taxes.   Sects. 1685 and 1690 of the Code 1871, in requiring the collection of taxes to commence on the first day of October, made it necessary that the levy of county taxes should be made prior to that day, and, by implication, conferred authority to make such levy; and, as no time therefor was prescribed, the Board of Supervisors were authorized to make the levy at any meeting lawfully held.

7. SAME.   *Assessment.   Act extending time for, how applied.*

The act approved May the 11th, 1871, entitled "An act to extend the time for the assessment of taxes for the year 1871," did not apply to any assessment in respect to which everything required by the then existing law had been done before the passage of that act, but only to cases where the law had not been complied with.

8. SAME.   *Collection in 1871.   Operation of Code 1871.*

The provisions of the revenue chapter of the Code of 1871, in relation to the collection of taxes, the sale of land for taxes, and the conveyance of land thus sold, became operative on the 13th of May, 1871, and applied to such collections, sales and conveyances in that year.

APPEAL from the Circuit County of Lincoln County.

Hon. S. S. CALHOON, Judge, specially presiding, by exchange with Hon. J. B. CHRISMAN.

Isabella Brigins and James Hardie brought this action of ejectment to recover of D. W. Chandler a certain tract of land which they claimed as the heirs of Robert Hardie, who in his lifetime had a patent thereto from the United States. The defendant claimed title to the land through a tax-collector's deed.   The judgment was in favor of the defendant, and the plaintiffs appealed.   The facts established by the evidence and the questions arising thereon are sufficiently stated in the opinion of the court.

*Sessions & Cassedy*, for the appellants.

The plaintiffs below established a *prima facie* right to recover by introducing in evidence a "patent" to the lands in controversy from the United States government to Robert Hardie, whose death, intestacy, and the heirships of plaintiffs below were shown.   We claim that the record discloses that the sale for taxes was illegal and void.   The court will observe

that the clerk of the Chancery Court testifies that there is nothing in the minutes of the Board of Supervisors showing when the land-roll for 1871 was filed, or whether it was ever filed. As to the deed, which shows on its face that the sale was on the wrong day, we refer to the case of *McGehee* v. *Martin*, 53 Miss. 520, where it is held that a deed reciting a sale on the wrong day is void on its face. It has not yet been held that that which is, void can be made valid by any sort of legal or other legerdemain.

*Charles Chrisman*, for the appellee.

That the sale of the land actually occurred on the day prescribed by law is abundantly proved. If this proof is not available to the defendant, it is because he is estopped by the recital of the sheriff as to the date of the transaction. This recital of the sheriff is in no sense the act of the defendant. The sheriff was not his agent to sell or to make the conveyance. He was not a party in the sense of making a contract or having it put in writing, since the conveyance was not delivered to him, but to the clerk of the Chancery Court. See sect. 1701, Code 1871. He was not entitled to the conveyance or to supervise it in any way, until two years from the date of the purchase; but suppose he was a party in the sense in which I contend he was not. The controversy arises as to the real date of the transaction. This may always be shown. See 3 Black, 304; *McComb* v. *Gilkey*, 29 Miss. Reading the record made by the Board of Supervisors, and in the light of the law as it existed in 1871, that record is marvellously regular. First, as to the law. See Laws 1870, p. 39 It was an amendment to the revenue law and required the assessment to be made between the 1st day of January and the 2d Monday in May. The Board of Supervisors were required to meet on the 2d Monday in May, to hear objections and pass on the roll. The board did meet, and the assessor laid his roll before them and certified to it. The board then proceeds to examine and equalize by districts, and passed on the assessment in every district in the county, and confirmed it.

But it may be said that the date of filing this roll was in September, 1871, and there was no confirmation after that date. This ingenious suggestion is easily explained. On the 11th day of May, 1871, after the confirmation by the Board of Supervisors of the assessment-roll the Legislature passed an act for the relief of delinquent assessors. It had no application to Lincoln County. It was not intended to undo work which was completed. See Laws 1871, p.96. The assessment-roll of Lincoln County for 1871 had been returned and acted upon before this law extending the time was passed or went into effect. Is it good reasoning to say the intention of the Legislature was to make this assessment ineffective and put the county to the expense and trouble of going over the same ground and assessing lands that had already been assessed ? It certainly was only for the benefit of those assessors who had failed to make and return their assessments as required by law. The taxes were levied at a special term ; but this was authorized. See sect. 1353, Code 1871. It was a special meeting, not an adjourned meeting. The law does not require the notice to be made matter of record. This court, therefore, will not. In fact it has decided it is not necessary. See *Williams v. Cammack*, 27 Miss.221.

*R. H. Thompson*, on the same side.

The levy was correct and legal. Our first inquiry is, what time was fixed by law for the levy of county taxes in 1871? Here we find a peculiar state of affairs, according to the result of my researches. By the Code of 1857, p. 418, Art. 24, it is provided that county taxes shall be levied on the second Monday of October in each and every year ; by Art. 25 it is provided, that if the taxes are not then levied, a meeting shall be called at some convenient time as early as practicable. Chap. 59, Code 1857. This law was not expressly repealed or amended until October 1, 1871, when chap. 11, Code of 1871, "An act in relation to Boards of Supervisors," went into effect, — sect. 1372 in which directs that the county taxes shall be levied in July. Now note, chap. 22,—

the revenue law in Code 1871, took effect May 13, 1871.; sect. 1372, Code 1871, fixing the time for levy of county taxes did not become a law until October 1, 1871. The revenue law of 1871, taking effect May 13, 1871, provided, that tax-collecting should begin on the 1st day of October, a time before the county levy could be made by any express statute then in force. The consequence was the revenue law of 1871, left the power in the Board of Supervisors to levy county taxes ; but since county taxes, in the nature of things must be levied before collected, by necessary implication the time provided in the Code of 1857 was repealed and the supervisors after the 13th day of May, 1871, had the power to levy at any time before tax-collecting was to begin. The levy for 1871 was made by the Board of Supervisors of Lincoln County on the 29th day of September, 1871, before collections were to begin. The levy was made at a special meeting which the board was authorized to hold. Sect. 1730, Code 1871. As to the regularity of this meeting, as to whether notice thereof was given, it must be presumed that it was given. *Doe* v. *Burford*, 26 Miss. 194 ; *Williams* v. *Cammack*, 27 Miss. 209. The sale was at the proper time. By Code 1871, sect. 1697, the sale was to be made on the first Monday of January, 1872. The deed to appellee is dated January 27, 1872, but it was admitted on the trial that the sale took place in fact on the first Monday in January, 1872. (This is the effect of the admission.) The collector simply delayed the making of the deed until the 27th. As to the effect of the admission see *Hardy* v. *Chrisman*, *ante*, p. 671.

*Calhoon & Green*, on the same side, filed an elaborate brief discussing the application of the Statute of Limitations to the facts of this case, but as the question presented, was not passed upon by the court, the brief is omitted from this report.

CAMPBELL, C. J., delivered the opinion of the court.

The sale for taxes was made on the first Monday of January, 1872, which was the time fixed by law for sale of land delin-

quent for non-payment of taxes, and the dating the con-
veyance on the day it was made, which was a subsequent day,
did not affect its validity, nor did the recital in the conveyance
that the sale was made on the day of its execution, preclude
the showing of the fact that the sale was made at the proper
time.

There was no error in the assessment. It was governed by
"An act to raise revenue," etc., approved, July 9, 1870 (Acts
1870, p. 24) and an act supplemental to it, approved July
21, 1870 (Acts 1870, p. 38), by which property and polls
were to be assessed between the 1st of January and first Mon-
day of May, 1870, and annually thereafter, and as part of the
process of assessment, the Board of Supervisors was to meet
on the second Monday of May in each year, "to hear and
determine appeals taken from the decisions of assessors,
authorized by this act to be taken, and to make all proper
corrections of the assessment-lists," after which the assessor
was to complete and certify his assessment-rolls by the third
Monday of June, and they were to be copied and delivered, as
required by law, to the auditor and collector, by the second
Monday of July.

The acts cited did not require the completion and delivery
of the assessment-rolls to some officer by a prescribed time
for objections to be filed thereto, as prescribed by Art. 25, p.
77, of Rev. Code of 1857; but the contemplation was that the
assessor was to make lists of persons and property, and the
Board of Supervisors should meet at the time mentioned,
when all complaints should be heard and disposed of, and
thus by the conjoint action of the assessor and the Board of
Supervisors, the assessment should be completed.

The assessment-roll of lands in Lincoln County, made in
1871, was certified by the assessor on the 8th day and second
Monday of May of that year, and the Board of Supervisors of
that county held a meeting, commenced on that day, and
made corrections of the roll, and adopted and approved it as
made and corrected. This was before the revenue act of the

Code of 1871 took effect. It was approved May 13, 1871, and took effect immediately, but the proviso to sect. 1675 of the Code declares "that the first assessment under this law shall be made in the year 1875," and its framer endeavored to say that until an assessment of lands in 1875, any assessment of land as provided by then existing laws in 1871, should continue in force, and be the basis of taxation and collection. The purpose and effect of the proviso are obvious. When the revenue chapter of the Code of 1871 was adopted, the assessment was supposed to be completed, or nearly so, under pre-existing laws, and as another assessment of land was not intended to be made until 1875, it was so declared, and thus the operation of the chapter as to assessment of land was suspended until 1875. This assessment was made and completed before the revenue chapter of the Code of 1871 took effect, and any subsequent action of the Board of Supervisors with respect to the assessment-roll, under the mistaken view that it was required by the act on the subject of revenue in the Code of 1871, and which is not shown to have done any wrong or injury to the person complaining of it, did not impair the validity of the previous assessment.

The delivery by the assessor of the roll to the clerk of the Chancery Court, to be by him dealt with as the law directed, was all that was required, and the fact that the roll contained no entry to show that it was filed, or when it was filed, is not a fatal objection. The list of property was made with its valuation, and the Board of Supervisors revised and corrected it, and approved and adopted it as corrected, and it was delivered to the Chancery Clerk, and that was all that was required. The levy of county taxes in Lincoln County in 1871 was made at a special meeting, held on the 29th of September. The law authorized special meetings to be held, and this must be presumed to have been rightfully held in the absence of any showing to the contrary.

There was no valid objection to a levy of county taxes at that time. The law governing the time for the levying of county taxes prior to the act of July 9, 1870, above cited,

was Art. 24, p. 418, of the Code of 1857, and the second Monday of October was the prescribed time, and this was changed only by the requirement that the collection of taxes should be commenced on the first day of October (Code 1871, sects. 1685, 1690), which made it necessary that the levy of county taxes should be made prior to that date, and by implication conferred authority to make such levy; and as no time for it was prescribed, it was for the Board of Supervisors to make it, at any meeting lawfully held. The law remained such until the 1st of October, 1871, when the Code of that year took effect, by sect. 1372 of which the 1st Monday of July was prescribed for the meeting to fix county taxes. The assessment in Lincoln County in 1871, which seems to have been completed at the meeting of the Board of Supervisors begun on the 8th of May, was not affected by the "act to extend the time for the assessment of taxes for the year 1871," approved, May 11, 1871. Acts 1871, p. 96. That was a mere extension of the time in which the assessment was to be made, and meetings of the Board of Supervisors were to be held with reference to the assessment, and applied only to cases where the assessment had not been made, and the required meeting held before the act became a law. Where everything required by existing law to make the assessment was done before the act of May 11, it was not necessary to do again what was thus required and had been done.

While the revenue act in the Code of 1871 was made to take effect on the 13th May, 1871, and its provisions were suspended by the proviso to sect. 1675, as shown above, as to the assessment of land in 1871, the provisions of that chapter as to the collection of taxes, and sale and conveyance of land for taxes did apply to the collection of the taxes of that year, and by sect. 1700 the conveyance by the tax-collector was made "*prima facie* evidence that the assessment and sale and all proceedings of sale were valid."

Our conclusion is that the title of the land in dispute was vested in the purchaser at the sale for taxes, and the judgment for the defendant below is affirmed.