(84 N. W. Rep. 353.)

---

CURTISS SWEIGLE *vs.* J. C. GATES, *et al.*

Opinion filed October 23, 1900.

**Taxation—Listing Property—Unknown Owners.**

> Action to quiet title, and construing section 1548 of the Compiled Laws: *Held*, that the requirements of said section, with respect to listing property for taxation, to the effect that the assessor shall list property in the name of the owner if known to him, and if not known to list the same to "unknown owners," is mandatory, and not merely directory.

**Void Assessment Because Not in Name of Owner.**

> *Held*, that an attempted assessment of certain lots in the year 1887, under said section, the title to which is involved in this action, is

void for the reason that the assessor in listing said lots for taxation wholly disregarded said mandatory provisions of staid section, and omitted to list the same in the name of the owner, or to "unknown owners," or to any person whomsoever.

## Tax Deeds Voidable.

The county treasurer at the annual tax 'sale' of 1888 sold the lots in controversy to satisfy the alleged taxes of 1887, which were based upon said attempted assessment, and subsequently, no redemption from such sale having been made, executed tax deeds of said lots based upon said sale, and delivered the same to these defendants. *Held,* that said tax deeds were executed and delivered without authority of law, and were voidable for that reason.

## Voidable Tax Deed—Will Not Start Limitation.

*Held,* further, that such deeds being voidable for jurisdictional reasons, viz: for the non-assessment of the lots described in the same, were powerless to start the statute of limitations running, and hence that when the same were recorded they did not so operate, despite the fact that said deeds were recorded more than three years prior to the commencement of this action.

## Notice of Tax Sale—Description of Property.

Said tax sale of 1888 was made pursuant to a published notice of sale, which is governed by section 1620 of the Compiled Laws of 1887. Said section required that the published notice should embrace "a list of the lands to be sold and the amount of taxes due." Upon the facts stated in the opinion, *held,* that said published notice did not embrace any description of the lots described in the tax deeds in question; and, accordingly, *held,* that the treasurer was without jurisdiction to sell said lots at said tax sale of 1888.

## Tax Levy Void—Not Made in Specified Amounts.

The lots were again sold for taxes by the county auditor of Richland county at the annual tax sale made in the year 1892 for the alleged taxes thereon of the year 1891, and were never redeemed from such sale. On July 21, 1899, said county auditor executed and delivered to the defendants tax deeds of said lots based upon the sale of 1892, and such deeds were regularly recorded. It appears that the alleged taxes of 1891 are based upon an attempted levy of taxes made by the commissioners of Richland county at a meeting held on the first Monday in July, 1891, and that such levy was not made in specified amounts, as was required by the statute then in force. See section 6, chapter 100, Revenue Laws 1891. Said attempted tax levy was made pursuant to the provisions of section 1589 of the Compiled Laws, which section was not then in force. *Held,* that such attempted levy of the taxes of 1891 was wholly without authority of law, and that the sale made pursuant to such levy was made without jurisdiction to sell. Said last-mentioned tax deeds were made prima facie evidence of the regularity of all the tax proceedings, but such evidence was overcome and rebutted by the proof that the levy was void.

Appeal from District Court, Richland County; *Lauder,* J.

Action by Curtiss Sweigle against J. C. Gates and others. Judgment for defendants, and plaintiff appeals.

Reversed.

*S. H. Snyder* and *Curtiss Sweigle,* for appellant.

Defendants set up the statute of limitations, and also title in them-

selves, through tax proceedings. By pleading their tax titles defendants waived .the defense of the statute of limitations and invited a trial upon the merits. *London, Etc., Co.* v. *Gibson,* 80 N. W. Rep. 205. At the time of the tax sale for the 1887 taxes section 1640, Comp Laws, was in force. This section was repealed by section 72 of the Revenue Law of 1890, and before defendant's 1887 tax deeds were recorded. The statute of limitations was repealed by the repeal of § 1640, Comp. Laws. *Shattuck* v. *Smith,* 6 N. D. 56, 69 N. W. Rep. 12. Section 1640, Comp. Laws was re-enacted in § 1269, Rev. Codes of 1895, which repealed § 72 of the 1890 Revenue Law. This suit was begun less than three years after § 1269 went into effect. The statute of limitations cannot run, though the deed is recorded, until there is a right of action for it to run upon. So long as the owner is in possession and keeps it the statute does not run against him but runs against the purchaser. Blackwell on Tax Titles, 838; *Baldwin* v. *Merriam,* 20 N. W. Rep. 250. The tax deed is without any seal of the treasurer affixed, and is not in the form prescribed by § 1639, Comp. Laws, and is void upon its face. Black on Tax Titles, 211; Blackwell on Tax Titles, 773; *Eaton* v. *North,* 20 Wis. 449; *Sturdevant* v. *Mather,* 20 Wis. 576; *Sullivan* v. *Merriam,* 20 N. W. Rep. 118; *Bendickson* v. *Fenton,* 31 N. W. Rep. 685; *Salmer* v. *Lathrop,* 72 N. W. Rep. 570; 25 Enc. 691, note 5. The fact that the law does not specifically provide the treasurer with an official seal does not excuse the absence of such a seal from the tax deed. *Bendickson* v. *Fenton,* 31 N. W. Rep. 685. The lots were not assessed to the owner in 1887, nor to unknown owners. The requirement that the property be assessed to the owner or unknown owner is mandatory and jurisdictional. Black on Tax Titles, 37; *Lague* v. *Boagni,* 32 La. Ann. 913; *Davenport* v. *Knox,* 34 La. Ann. 408; *Roberts* v. *First National Bank,* 8 N. D. 504, 79N. W.Rep. 1052; Blackwell on Tax Titles, 929; *Milwaukee Iron Co.* v. *Hubbard,* 29 Wis. 51; *Himmelman* v. *Steiner,* 38 Cal. 175; *Abbott* v. *Lindenbower,* 42 Mo. 162; *People* v. *Castro,* 39 Cal. 65. The board of equalization raised the property valuation without notice to the owner. § 797, Comp Laws; *Power* v. *Larrabee,* 49 N. W. Rep. 734, 2 N. D. 141. The school tax was levied by percentages, the levy was not based upon estimates of the city auditor. § 922, Comp. Laws; *Wells County* v. *McHenry,* 7 N. D. 246, 74 N. W. Rep. 241; *Shattuck* v. *Smith,* 6 N. D. 56, 69 N. W. Rep. 10. The owner did not have full sixty days notice of of the expiration of the redemption and the deed is void for uncertainty in that it is in the alternative, to-wit: "Time for redemption will expire December 31st or within sixty days after the service of this notice." *Clary* v. *O'Shea,* 75 N. W. Rep. 115; *Peterson* v. *Mast,* 63 N. W. Rep. 168. The law in force when the deed was applied for, governed. Hence, notice of the expiration of redemption was necessary. *Callahan* v. *Sweeney,* 21 Pac. Rep. 960. Where notice of redemption is not given the statute of limitations does not run in favor of the tax deed. *Slyfield* v. *Barnum,* 32 N. W. Rep. 270.

Receipts for subsequent taxes paid are not evidence, and defendants cannot recover the same without first providing that the taxes were legal. *O'Neil* v. *Tyler*, 3 N. D. 47, 53 N. W. Rep. 434.

*Davis, Lyon & Gates,* for respondents.

Appellant seeks under § 5630, Rev. Codes, to have the entire case reviewed in this court. He has.not made a specification of particulars in the stated case, nor has he specified the questions of fact that he desires reviewed. The demand for a review of the entire case does not relieve appellant from the necessity of specifying the questions of fact to be reviewed. *Rick* v. *Bergsvendson,* 8 N. D. 578; *Hayes* v. *Taylor,* 9 N. D. 92, appear to hold to the contrary, but such holdings were unnecessary to the decision of said cases. The pretended settlement of a case by the trial court after appeal is void. *Carmichael* v. *Vandeburr,* 51 Ia. 225; *Moore* v. *Booker,* 4 N. D. 543, 62 N. W. Rep. 607. The tax deeds for 1887 were valid on their face. There was an assessment, meeting of the board of equalization at the proper time, a levy and sale. *Roberts* v. *Bank,* 8 N. D. 504, 79 N. W. Rep. 1049. The tax deeds are conclusive evidence of the regularity of all proceedings, excepting as to the objections raised in the pleadings. *Roberts* v. *Bank,* 8 N. D. 504; *Larson* v. *Dickey,* 58 N. W. Rep. 167. The deeds were recorded February 6th, 1891, and § 1640, Comp. Laws, governs as to the time within which an action can be brought. *Meldahl* v. *Dobbin,* 8 N. D. 115, 77 N. W. Rep. 280; *Roberts* v. *Bank,* 8 N. D. 504. This section was not repealed by § 72, chap. 132, Laws 1890, because said section refers to sales made pursuant to said act, and said act is prospective in its operation. *Wells County* v. *McHenry,* 7 N. D. 246, 74 N. W. Rep. 241. By alleging title in themselves and praying that they be adjudged the owners in fee of the premises, defendants have not waived the defense of the statute of limitations. In this state as may defenses are allowed to be pleaded as the defendant may have. § 5274, Rev. Codes; *Stebbins* v. *Larder,* 48 N. W. Rep. 847; *Lawrence* v. *Peck,* 54 N. W. Rep. 808; *Green* v. *Hughitt,* 59 N. W. Rep. 524; *Nollman* v. *Evenson,* 5 N. D. 344, 65 N. W. Rep. 686. The absence of any verification of the assessment roll does not invalidate the assessment. *Farrington* v. *Assessment Co.,* 45 N. W. Rep. 191; *Avant* v. *Flynn,* 49 N. W. Rep. 15; *Twinting* v. *Finley,* 75 N. W. Rep. 548. The lots not having been assessed to any person the assessment is presumed to be made to unknown owners. *Burdick* v. *Connell,* 69 Ia. 458. The unlawful action of the board of equalization cannot be made the basis of relief in equity, it occurred in the determination of a question of which the board had jurisdiction and will stand until corrected in a proper proceeding. *Railway Co.* v. *Seward,* 10 Neb. 211, 4 N. W. Rep. 1016; *Miller* v. *Hurford.* 10 Neb. 13, 12 N. W. Rep. 832; *Clarke* v. *Board,* 50 N. W. Rep. 615; *Pennsylvania Co.* v. *Crystal Falls,* 27 N. W. Rep. 6; *Lawrence* v. *Janesville,* 50 N. W. Rep. 1102; *Nugent* v. *Bates,* 50 N. W. Rep. 76; *Harris* v. *Freemont County,* 19 N. W.

Rep. 826; *Pierre Water Works Co.* v. *County,* 5 Dak. 145. Where in fact an assessment levy and sale have been made the deed becomes conclusive evidence that all the attending steps were regular. *Bulkely* v. *Callahan,* 32 Ia. 461; *Eldridge* v. *Kuehl,* 27 Ia. 160; *McCready* v. *Sexton,* 29 Ia. 356; *Martin* v. *Cole,* 38 Ia. 234; *Ware* v. *Little,* 35 Ia. 234. Notice of expiration of time of redemption was unnecessary because the notice is required to be given the person in whose name the lands were assessed, and it would be an idle act to give notice to an unknown owner. *Tuttle* v. *Griffin,* 64 Ia. 455; *Chambers* v. *Haddock,* 64 Ia. 556; *Meredith* v. *Phelps,* 65 Ia. 118; *Walker* v. *Towne,* 65 Ia. 563; *Burdick* v. *Connell,* 69 Ia. 458. Notice was unnecessary because the law extending time for redemption does not apply to sales made prior to the passage of the act. *State* v. *Fylpaa,* 54 N. W. Rep. 599.

WALLIN, J. This action is brought to quiet the title to three city lots located in R. S. Tyler's addition to the city of Wahpeton. The District Court entered judgment in fovor of the defendants, dismissing the action, with costs, and quieting the title in the defendants. Plaintiff appeals from such judgment to this court, and in the settled statement of the case plaintiff has demanded a retrial in this court of all the issues involved. The complaint alleges, in effect, that the plaintiff is the owner of the lots in question, and that the defendants claim some interest in the lots adversely to the plaintiff, and asks that the title be quieted in the plaintiff. Defendants answer jointly, and deny the plaintiff's ownership, and allege ownership in themselves. The answer further sets out the defendants' sources of title, and alleges, in substance, that the defendants became seised of their title under certain tax deeds running to the defendants, and which were executed and delivered to the defendants pursuant to certain tax sales made in Richland county, and that said deeds were so made and delivered, respectively, by the county treasurer and the county auditor of the county of Richland, as is hereinafter more particularly explained. The answer further pleads the statute of limitations in bar of the action, and in this behalf alleges that three of said tax deeds, one for each lot, were based upon the annual tax sale of 1888 for the taxes of 1887; that such deeds are dated on January 2, 1891, and were duly recorded on February 6, 1891, and that this action was not commenced until more than three years had elapsed after said deeds were recorded, and not until December, 1898. These deeds were executed and delivered by the county treasurer of Richland county. The answer further sets out, as a source of defendants' title, three other tax deeds, one for each lot, executed and delivered by the county auditor of Richland county. These last-mentioned deeds are based upon the tax sale of 1892 for the taxes of 1891, but were not issued or delivered until July 1, 1899. To each of the three tax deeds first above mentioned,—those based upon the sale of 1888,—when offered in evidence, plaintiff objected upon the ground that they were incompetent, irrelevant, and im-

material, and upon the specific ground that the treasurer was without legal authority to issue the same. Other specific grounds of objection to the deeds were stated, to which we shall not have occasion to refer.

We will first notice defendants' contention that the three-years statute of limitations, embraced in section 1269, Rev. Codes 1895, operates to bar this action. This question, in view of the very frequent and radical changes made in the revenue laws, presents considerable difficulty; but we have reached the conclusion, at least for the purposes of this case, that said section operates as a bar to this action, if the tax deeds now under consideration when recorded had the effect to start the statute running, and this question in its final analysis depends upon whether the county treasurer, who executed and delivered the deeds, had jurisdiction so to do. It is well settled that tax deeds which upon their face are void for jurisdictional reasons do not operate to start a limitation statute running; and it is also well settled, both upon principle and authority, that, where an officer executing a tax deed was without jurisdiction so to do, such deed will not start the limitation running, even if the deed be entirely regular upon its face. In other words, the want of legal authority to execute a tax deed may be demonstrated either by jurisdictional defects upon the face of the deed, or by evidence *aliunde,* showing such jurisdictional defects in the tax proceedings upon whicn the deed issues as are under the law fundamental to the tax.

What particular tax proceedings are deemed to be jurisdictional to a sale of land for taxes must in all cases depend vitally upon the terms of the laws under which a tax is sought to be assessed, but it is entirely safe to say that, under a system of taxation which is based upon an official assessment or valuation of property, no tax can be lawfully laid until the valuation has been made in substantial conformity to the statute governing such valuation. This court very recently had occasion to consider a tax deed based upon a tax sale made by the county treasurer, and resting upon a sale for the taxes of 1888. The deed in that case was considered with reference to the statute of limitations, and embraced substantially the same language as that found in the deed we are now considering. See *Roberts* v. *Bank,* 8 N. D. 504, 79 N. W. Rep. 1049. Commenting in that case upon the necessity of an assessment as a proceeding essential to a tax, this court said: "An assessment is, in the broadest sense, a jurisdictional requirement." In the case cited the fact of non-assessment did not appear upon the face of the deed, and yet the court held in that case that the deed was utterly void, and did not set the statute of limitations running. See authorities cited in the opinion. In that case there was not a total failure to assess. The defect there was that the sale of one-half of a lot was made to satisfy a tax based upon an assessment of the whole lot, but the case is authority for the proposition that an assessment must be a

legal assessment, and one that will justify the sale, and that it is not enough to show merely that an assessment, however illegal, has been made in fact. It has become elementary in tax proceedings that an assessment, in order to be valid, must be made substantially in accordance with the statute governing the assessment. True, certain of the directions of such a statute which are intended merely to secure order and system in the dispatch of business, and which cannot injuriously affect the interests of a taxpayer, are usually held to be merely directory, and their non-observance, therefore, will not invalidate an assessment; but, on the other hand, where statutory requirements are clearly intended for the protection of the citizen and taxpayer, such provisions are uniformly held to be mandatory, and their disregard will defeat the validity of the assessment. See Cooley, Tax'n, pp. 284, 285, and cases cited; 1 Desty, Tax'n, § 106.

In this case the contention is made that the treasurer was without authority to issue the tax deeds based upon the sale of 1888, and this contention rests upon the ground that the assessment of 1887 was illegal and void. The assessment roll for 1887 was put in evidence, and from it it appears that the lots were not assessed in the name of the owner, and further, that they were not assessed to "unknown owners." The column in the form of the return prescribed in the statute intended to be filled with owners' names, and headed "Owner," was left entirely blank in the space opposite the descriptions of all the lots. The assessment was governed in this feature by section 1548 of the Compiled Laws of 1887, which contains the following provision: "If the name of such owner be known to the assessor the property shall be assessed in his, her, or their name, if unknown to the assessor, the property shall be assessed to 'unknown owners.'" It is obvious, therefore, that this provision of the statute was wholly disregarded by the assessor, and the pivotal question upon this point is whether this statutory provision is mandatory, or whether the same is merely directory; and the solution of this question, under well-established rules of construction, will depend upon the further inquiry as to whether this feature of the statute was intended simply to facilitate the orderly dispatch of official business, or, on the other hand, its purpose was to throw around the taxpayer an additional safeguard.

We are of the opinion that this statute was passed wholly in the interest of the taxpayer, and therefore that the same is mandatory in its requirements. Under the statute, the taxpayer is advised that his name will appear opposite a description of his property in the tax return required to be made to the county auditor, unless it appears by an official statement written opposite such description by the assessor that the name of the owner is unknown. The requirement that the owner's name must be stated, when known to the assessor, is not more explicit than that which requires the assessment to be made to "unknown owners" in cases where the assessor is not advised and does not know the name of the owner. It does not at all satisfy the mandate of this statute to omit all

reference to a name in any case because the law specifically requires affirmative action on the part of the officer in all cases, and whether the name is or is not known to him. There is authority, based upon obviously sound reasoning, to the effect that where the law requires an assessor to list property in the name of the owner, if known, he will be presumed to have done his duty in cases where he omits the owner's name. The name being omitted, it will be assumed that the name of the owner was unknown to the officer, and hence was properly omitted from the return. But, under the statute controlling this assessment, such a rule could not apply, because the statute requires affirmative action in cases where the owner's name is unknown to the officers.

The taxpayer, finding no entry at all in the return in the column headed "Owner," has, in our opinion, the best of reasons for assuming that his lands are not included in such an assessment, and are not, therefore, lawfully assessed by such a return. See *Smith* v. *Davis,* 30 Cal. 537; *Smith* v. *Cofran,* 34 Cal. 310; *Himmelmann* v. *Steiner,* 38 Cal. 175; *Hewes* v. *Rees,* 40 Cal. 255; Weltz, Assessm. § 65. See *Desmound* v. *Babbitt,* 117 Mass. 233; *Abbott* v. *Lendenbouer,* 42 Mo. 162. In the case last cited the court uses this language: "The assessors have no jurisdiction to assess property otherwise than as the statute prescribes, and a void assessment (which is equivalent to no assessment at all) against the owner cannot be made the foundation of a sale and conveyance of his land even by legislative enactment." In this case the court held that a tax deed may by legislation be made prima facie evidence of title, but cannot be made conclusive as to matters which are essential to the exercise of the taxing power, and it is held, further, that an assessment is essential to a tax. Counsel for defendants cite *Burdick* v. *Connell,* 69 Ia. 458, 29 N. W. Rep. 416, and other Iowa cases, in support of the assessment in the case at bar. These cases are not cases directly involving the validity of assessments, and hence are not strictly in point; yet it will be conceded that the reasoning of the cases, if applied to an assessment, would support defendants' contention. We deem it to be our duty, nevertheless, to take the opposite view, and in doing so we have no doubt that our conclusions can be sustained on principle, and by a decided preponderance of judicial opinion.

The trial court found that an assessment in fact was made in 1887. We cannot, under the authorities, yield assent to this statement. No assessment which disregards provisions of law made solely for the protection of the taxpayer is a valid assessment, and hence such an assessment cannot be lawfully regarded as an assessment in fact. An assessment in fact which is not a legal assessment is a legal impossibility. True, the legislature had authority to declare by statute that an error in listing for taxation as to the name of the owner or any omission in this respect should not defeat the assessment, but no such curative statute existed when the assessment of

1887 was made. Section 1641, Comp. Laws, has no application to the facts in this record. Finally, upon this point, we hold that to give validity to the deeds in question would operate to deprive the plaintiff of his property without due process of law. The evidence discloses other serious defects in the assessment of 1887, but these need not be particularly discussed.

Turning, now, to the pretended tax sale upon which the deeds were issued,—the sale of 1888,—it is further contended that the sale was without legal authority, and gave the treasurer no jurisdiction to issue the deeds, for the reason that the notice of sale was vitally defective, in this: that the notice did not contain a description of the lots in question or either of them. That a sale actually made, but made without legal notice, in a case where the law requires notice, is invalid, and confers no authority to issue a tax deed, is elementary. Such a mode of transferring title to real estate would amount to confiscation, and is not tolerated by the law. The omission of a valid notice of sale is not, therefore, a mere irregularity of procedure which may be cured. See Black, Tax Titles (2d Ed.) § 205. The notice of the sale, as published, was put in evidence by the plaintiff, and the defect relied upon has reference to the description of the lots. The notice stated, in effect, that the property to be sold consisted of real estate situated in the county of Richland, "described as follows." The particular descriptions were set out in the manner following:

| "Description. | Sec. | Acr. | Amt. |
| --- | --- | --- | --- |
| "Eagle Township 1887." | | | |

Following this heading are several columns of descriptions of farm lands situated in townships. The first description of city or town lots in the notice begins with the following heading: "Village of Lidgerwood." Under this appears the heading "Lot," "Block." Under these headings were several columns, containing descriptions of town lots, and these continue, until we find the following heading in the notice: "R. S. Tyler's Addition." Under this heading we find the following:

| "Lot. | Blk. | Amt. |
| --- | --- | --- |
| 4 | 2 | 4 08 |
| 5 | " | 4 08 |
| 6 | " | 4 08" |

Unless the property in suit is described in the above description, the same is not described at all in the notice of sale. We are compelled to hold that the notice is wholly insufficient and void. The lots described in the pleadings and in the tax deeds are situated in "R. S. Tyler's addition to the city of Wahpeton." We find no such lots described in the published notice. The description of city or town lots, as has been shown, begins with the village of Lidgerwood, and under this heading a large number of city lots are described by lots and blocks. Next following such descriptions we find the heading, "R. S. Tyler's Addition." This heading, when considered in

connection with the lot numbers and block number, as above set out, fails entirely to locate or describe the lots in question. There is nothing whatever in the notice to indicate that the lots numbered below this heading are situated in R. S. Tyler's addition to the city of Wahpeton. On the contrary, the words "R. S. Tyler's Addition," standing alone, wholly fail as a description of real property; but in this case these words seem to fairly connect themselves with the description which is named next above the words "R. S. Tyler's Addition," viz : with the "Village of Lidgerwood." The entire notice, when most liberally construed, therefore declares that the lots attempted to be described are situated in R. S. Tyler's addition to Lidgerwood, and that such addition to Lidgerwood is within the county of Richland.

We will now proceed to consider the series of tax deeds issued to the defendants by the county auditor of Richland county, and bearing date the 21st day of July, 1899. These deeds purport to convey the lots above described, and are based upon a tax sale for the taxes of 1891. As to this series of deeds no question arises under any statute of limitations, and the only question which we deem it necessary to discuss or pass upon relates to the tax levy made by the county commissioners in the year 1891. We here quote from the abstract all the evidence bearing upon such levy which is found in the record :

"Plaintiff introduced in evidence commissioners' record of Richland Co., a record of the auditor's office, and particularly page 400, to show levy for 1891, which reads as follows :

" 'On motion, the county board made the following levy for the year 1891 :

| | | |
|---|---|---|
| For Co. revenue fund | 5 | mills. |
| "  road and bridge fund | 1 | " |
| For sinking and int. fund | ½ | " |
| | | |
| Total | 6½ mills. | |

" 'The levy of the county revenue fund was based on the following estimated expenses for the ensuing year :

| | |
|---|---|
| District attorney | $ 1,100 |
| County surveyor | 50 |
| County commissioners | 1,750 |
| Stenographer | 300 |
| Justice court | 1,000 |
| Books and stationery | 1,800 |
| Light, fuel, and repairing court house | 1,500 |
| Miscellaneous | 2,000 |
| Sheriff office | 2,500 |
| Coroner | 400 |
| Clerk of court | 1,000 |
| District court | 4,000 |
| Election expenses | 1,000 |
| Printing and advertising | 1,500 |
| Hospital and Co. poor | 4,000 |
| For redemption and interest outstanding warrants | 3,400 |
| | |
| Total | $27,000 |
| " 'Five mills valuation of $5,500,000 | $27,500' " |

The question of law arising upon the testimony above set out is whether the attempted tax levy constituted a valid levy. A solution of this inquiry involves a consideration of the law regulating tax levies for counties which was then in force. The levy was governed by the provisions of the revenue law of 1890, and particularly section 48 of that enactment, as amended by section 6 of chapter 100 of the Laws of 1891. We first call attention to the following language of said section: "The county taxes shall be levied by the county commissioners at the time of their meeting in July of each year." The July meeting of the board occurred at that time on the first Monday in July. Comp. Laws 1887, § 579. Under section 44· of the 1890 tax law, the county board of equalization, consisting of the commissioners and county auditor, were required to assemble annually on the second Monday of July. After the county board of equalization completed its duties, the county auditor was required to send an abstract of the equalized tax lists to the state auditor on or before the 4th day of August in each year. Section 45, Id. After the action required to be taken by the state board of equalization is completed, the law required that the rate per centum shall be based by the auditor upon the valuation as finally fixed by the state board of equalization. Section 48, as amended. We call attention to these provisions of the acts of 1890 and 1891 for the purpose of showing that in the year 1891 the law required county taxes to be levied in advance of any action which could lawfully be taken by either the county or state board of equalization, and hence such levy could not lawfully be based upon any per cent. of the valuation made for the same year. The valuation itself was a later act than the levy; and hence to base a levy upon such valuation was a physical, as well as a legal, impossibility. Nevertheless the evidence shows that the commissioners in the year 1891 attempted to levy the county taxes for that year upon a basis of percentage. They resolved to levy five mills for county revenue, one mill for road and bridge fund, and one-half mill for sinking and interest fund. Thus it appears that the amount of money which would be realized from this attempted tax levy was wholly problematical, and would depend entirely upon the total equalized value of the taxable property, which value could not be ascertained until a date much later than the levy. But turning to section 6, Act 1891, we find that it plainly required that all county taxes should be levied in "specific amounts." This provision embraces a radical change in the mode of levying county taxes from that existing under the Compiled Laws. See sections 1589, 1591, Comp. Laws. Under the old system, the commissioners based their levy upon an equalized valuation, and did not meet to make such levy until the first Monday of September (sections 1590, 1591), prior to which time the action of the state board was certified to the county auditor. Again, section 6 of the act of 1891 requires not only that local taxes should be levied in specific amounts, but that such levies, as to county taxes, should be based upon "an itemized statement of the county expenses

for the ensuing year." This record shows that the itemized statement required was made and spread upon the record, but there was no attempt made to levy any tax whatever in a specified amount. On the contrary, the only language relating to any levy shows unmistakably that the commissioners were acting, or attempting to act, under the pre-existing statutes, and were attempting to levy a tax based upon percentages. The levy attempted to be made was in mills, and this would be meaningless, unless the language is considered in connection with some established basis of value. It is obvious, therefore, that the mode of levying the tax for 1891 was not only without authority of law, but was directly contrary to positive and plain provisions of the statute controlling the levy. The right to levy a tax is conferred by law upon county commissioners, but this right is carefully limited, and the mode of making the levy is detailed in the statute which delegates the right. Under the authorities, the manner or mode of making the levy is an essential part of the law, and must not, therefore, be radically departed from, but must be substantially adopted by the subordinate body to whom the right to levy is delegated. This court has passed upon the precise question presented in this branch of the case. See *Wells Co.* v. *McHenry*, 7 N. D. 246, 260-262, 74 N. W. Rep. 241. This case will be ruled by the case last cited, and hence we shall hold that the levy for the taxes of 1891, and upon which the 1899 deeds are based, was wholly void, and not merely irregular. There was therefore no jurisdiction in the county auditor to issue said last-mentioned deeds, and the same are therefore without effect, and convey no title to these defendants.

Respondents' counsel have made certain preliminary objections to any retrial of this case in this court, which objections are based upon alleged defects in the statement of the case and in the service of an abstract. We have considered said objections, and the same are overruled.

It follows from what has been said that the judgment of the trial court must be reversed, and the court below is directed to reverse its judgment herein, and enter a judgment in plaintiff's favor, vacating all of said tax deeds, and quieting the title to the lots in question in the plaintiff, as demanded in the complaint. The plaintiff will recover his costs and disbursements in both courts. All the judges concurring.

### ON PETITION FOR REHEARING.

A carefully prepared and elaborate petition for rehearing has been filed in this case. The case was originally presented by foreign counsel, but since the decision in this court local counsel have been employed, and the greater part of the petition for rehearing was evidently prepared by local counsel. In so far as the petition relates to questions passed upon in the opinion handed down, we adhere to our rulings. Much of the petition, however, is devoted to grave and complicated jurisdictional and constitutional questions that were

in no manner presented to the trial court or to this court upon the argument, and we desire to take this occasion to condemn a practice that has become far too prevalent in this state, not that this case is more, or as much, open to the censure, as many other cases that we are required to consider, but because we desire the bar of the state generally to understand that it will hereafter be the rule of this court, from which departure will be made only in extreme cases, that no question will be considered upon a petition for rehearing that was not presented on the argument or decided in the opinion of the court. Our reason for the rule cannot be better stated than by quoting from adjudicated cases, citing first the language of Chief Justice Murray in *Andrews* v. *Hill Co.,* 7 Cal. 334: "This case may be said (without any disrespect to the counsel for the respondents) to be a fair illustration of a most pernicious practice which has sprung up among the bar in many instances, of presenting cases without that care and examination of the record which is necessary to a correct understanding of the case, and afterwards trusting to the indulgence of the court by way of a petition for a rehearing. In fact, so common has the practice become that the idea that a reargument will be granted as a matter of course seems generally to obtain, and petitions are filed in almost every case that is decided. I have had occasion to observe in the last two years that the best, and in many instances the only, arguments which were made in cases before us were in the form of petitions for rehearing. Such a practice does great injustice to the bar and the court, and frequently imposes upon us double labor, besides giving to the decisions a seeming contradiction." And in *Dougherty* v. *Henairie,* 49 Cal. 686, which was an attack upon a tax deed, the court said: "The sufficiency of the deed in this particular not having been questioned at the argument or in the briefs of counsel, we decline to consider the point now. The proper dispatch of the business of the court requires that counsel should state the grounds on which they rely in their briefs, and not reserve other points to be set up in a petition for a rehearing, after a decision of all the cause." In *Ramsey* v. *Barbaro,* 12 Smedes & M. 299, the court said: "We cannot grant rearguments on points or questions not raised in the first argument or assigned for error. This would be tolerating experiments on the judgment of the court, and trying cases by halves." In *Knoth* v. *Barclay,* 8 Colo. 306, 7 Pac. Rep. 289, the court said: "It is the duty of counsel to present all questions upon which they rely in their briefs and arguments in the first instance, and the court, in reviewing the cause, does not usually go beyond the subjects to which its attention is thus invited. It would be obviously unfair to permit the presentation of such questions as the one now before us at this stage of the proceedings. Counsel are not permitted to present part of their case at the formal submission, and the remainder upon the petition for a rehearing." See, further, *Rogers* v. *Laytin,* 81 N. Y. 642; *Weil* v. *Nevitt,* 18 Colo. 17, 31 Pac. Rep. 487; *U. S.* v. *Hall,* 11 C. C. A. 294, 63 Fed. Rep. 475;

*Tolman* v. *Bowerman*, 6 S. D. 207, 60 N. W. Rep. 751. Petition denied.

(84 N. W. Rep. 481.)