(88 N. W. Rep. 90.)

---

### ARTHUR B. LEE *vs.* IRA CRAWFORD.

Opinion filed Nov. 21, 1901.

**Ejectment—Limitations—Tax Deed.**

This action was brought to recover the possession of real estate which at and prior to the commencement of the action was in the defendant's possession. Plaintiff, by his complaint, alleged title in

himself in fee simple. Defendant answered, denying plaintiff's title, and alleging title in fee in the defendant. At the trial plaintiff offered as his sole evidence of title a certain tax deed which was issued by the county treasurer of Cass county in the year 1892, pursuant to a tax sale of the land made November 4, 1889, for a tax charged against the land in 1888. This action was commenced more than three years after the tax deed was recorded. *Held,* that the statute of limitation contained in § 1640, Comp. Laws 1887, does not operate as a bar to this action.

### Assessor's Return—Irregular Verification Not Fatal.

The defendant put in evidence the assessor's return for the year 1888, which embraced a description of the land described in the tax deed. The assessor's return was attempted to be verified by an affidavit subscribed by the assessor and affixed to the return. This was headed: "Territory of Dakota, County of Cass—ss." Its jurat was as follows: "Suscribed and affirmed to before me this 28th day of January, 1888. S. M. Edwards, Town Clerk." *Held,* that the venue of the affidavit is inartificial, in this: that it fails to show on its face that the town clerk administered the oath within the town in which he held office; but *held,* further, that such defect, under the more modern rule, is not a fatal defect. The court will presume, prima facie, in support of the affidavit, that the officer acted within his territorial jurisdiction in administering the oath.

### Assessment Void in Fact.

*Held,* further, that inasmuch as the return shows on its face that it was verified long prior to the date at which the assessment could lawfully be commenced under § 1546, Comp. Laws 1887, the assessor's return was not verified in fact, and hence the assessment was wholly void, under the rule established in Eaton v. Bennett, 10 N. D. 276, 87 N. W. Rep. 188.

### Sale for Excessive Amount.

The treasurer sold the land on which the deed issued on November 4, 1889, for the sum of $6.92, which fact is recited on the face of the deed put in evidence by the plaintiff. This sum was 96 cents in excess of all taxes due with interest and penalty added, together with all costs and charges legally due and collectible against the land at the date of sale. *Held,* that the sale for this excessive amount operated in law to render the entire sale illegal and void, and to defeat the tax deed issued upon the sale.

### Insufficient Description to Identify Land.

In the tax list of 1888, as certified to the treasurer for collection, the land in dispute was described as follows: "S. W. 4 of S. E. 4 of section 32, town 141, range 50." No evidence was offered showing how the land was described in the published notice of tax sale upon which the deed issued. *Held,* that, in the absence of testimony to the contrary, this court will presume that the published notice of sale contained a description of this land as found in the tax list, inasmuch as the treasurer, in selling, is governed by the list from which alone, under the law, he derives authority to sell for taxes. Upon this assumption, *held,* that the description as published was insufficient to identify the land advertised to be sold, and that the sale and tax deed are alike null and void, because the notice of sale was insufficient in law and in fact to describe and identify the land.

### Irregularities Not Cured.

*Held,* further, that nothing found in § § 1638, 1639, or 1640 of the Compiled Laws of 1887 operates to cure said irregularities in the tax proceedings.

### Prima Facie Character of Deed Destroyed.

> *Held,* further, that under § 1639 said tax deed is prima facie evidence of the regularity of the tax proceedings upon which it was issued, but that the evidence in the record destroys the prima facie effect of the deed. Such deed, under the statutes, does not operate as conclusive evidence of title, or of the regularity of the tax proceedings antecedent to the deed.

Appeal from District Court, Cass County, *Pollock,* J.

Action by Arthur B. Lee against Ira Crawford. Judgment for defendant, and plaintiff appeals. Affirmed.

*Newman, Spalding & Stambaugh,* for appellant.

The issuance of the tax deed foreclosed all inquiry into the irregularities named, and such deed is conclusive evidence of the truth of all facts recited therein. *Roberts* v. *Bank,* 8 N. D. 504. The tax sale created a contract between the territory and the purchaser, and the rights of the purchaser became fixed at the time of the sale. *Roberts* v. *Bank,* 8 N. D. 504. The only facts which are beyond legislative control are those over which such control is limited by the constitution. *In re Van Antwerp,* 56 N. Y. 265; *Matter of Trustee,* 31 N. Y. 584. All tax proceedings not removed from legislative control by constitutional limitations are exclusively within legislative regulation. *Smith* v. *Buffalo,* 159 N. Y. 432; *Terrell* v. *Wheeler,* 123 N. Y. 80. Legislative power within the territory of Dakota was vested in the Congress of the United States, Art. 4, § 3, U. S. Const., and the territorial legislature, under authority given it by congress, was competent to make tax sale certificates and tax deeds conclusive evidence of the regularity of tax proceedings exclusively with in legislative control. *Roberts* v. *Bank,* 8 N. D. 504. Defects and irregularities in tax proceedings which are jurisdictional can exist only as to those proceedings required by the constitution to be had in a particular mode. *Ensign* v. *Barse,* 107 N. Y. 329; *Terrell* v. *Wheeler,* 123 N. Y. 76; *People* v. *Turner,* 145 N. Y. 457; *Van De Venter* v. *Long Island,* 139 N. Y. 136. The listing of the property for assessment in the name of Crawford does not invalidate the sale. § 1544, Subd. 2, § § 1593, 1582, 1641, Comp. Laws; *Iowa & Dakota Co.,* v. *Barnes County,* 6 N. D. 601; *Tyler* v. *Cass County,* 1 N. D. 395. The assessments and levy being valid, all provisions of the statute providing the mode and manner of enforcing or collecting the tax are directory. § 1639, Comp. Laws; *Smith* v. *Cleveland,* 17 Wis. 573; *Pillow* v. *Roberts,* 13 How. (U. S.) 472. The constitution of the state was not in force at the time of the sale in this case. Its subsequent adoption could not alter the contract of the parties. *Railroad Co.* v. *McClure,* 10 Wall. 511, 19 L. Ed. 997; *Ohio Ins. Co.* v. *Dilvett,* 14 L. Ed. 1002; *New Orleans Gas Light Co.* v. *Louisiana Co.,* 115 U. S. 650, 29 L. Ed. 516. Appellant claims title under the act of the territorial legislature (§ § 1638 and 1639, Comp. Laws), passed under authority derived from con-

gress of the United States. The decision of this court can be re-viewed by ·the Supreme Court of the United States in this case. § 709, U. S. Rev. St. The Federal decisions, therefore, are con-trolling. *Carson* v. *Dunham,* 121 U. S. 421, 30 L. Ed. 995; *Cook* v. *Avery,* 147 U. S. 375, 37 L. Ed. 212; *Shevely* v. *Bowlby,* 152 U. S. 1; *Bank* v. *Yankton,* 101 U. S. 129, 25 L. Ed. 1046. The title of plaintiff is based solely upon the acts of the territorial legislature which had authority under the acts of congress, to adopt the statutes under which, and under the operation of which, appellant's title origi-nated, and under which he claims. *Bank* v. *Yankton,* 101 U. S. 129; *Murphy* v. *Ramsey,* 114 U. S. 15; *State Corporation* v. *United States,* 136 U. S. 1; *Benner* v. *Porter,* 9 How. 235; *Insurance Co.* v. *Cotton,* 1 Peters 511; *United States* v. *Gratiot,* 14 Peters 511. The acts of the territorial legislature were the acts of the government of the United States subject to be altered or repealed by congress, and must therefore be considered as acts of congress. *Bank* v. *Yankton,* 101 U. S. 129. Congress might, by legislative enactment, have fixed the value of all lands in the territory for the purpose of taxation. It might have disposed of any of the proceedings complained of in this action. Neither was jurisdictional or required by the constitution of the United States. *Ramsey* v. *R. L. Lewis Co.,* 85 N. W. Rep. 211; Cooley on Taxation, (2 Ed.) 344.

*J. E. Robinson,* for respondent.

The appellant failed to move for a new trial, and having failed to predicate error on the order denying a motion for a new trial this court should not review the evidence and appeal when the judgment presents no question of fact for review. *Pierce* v. *Manning,* 2 S. D. 517; *Murphy* v. *Bank,* 83 N. W. Rep. 575; *Plow Co.* v. *Bellon,* 4 S. D. 384; *Carson* v. *Funk,* 27 Kan. 524; *Struthers* v. *Fuller,* 45 Kan. 735; *Evenson* v. *Webster,* 3 S. D. 382. Appellant claims under a deed based on a sale for the tax of 1888. The sale was made for an excessive amount. It was made under § § 1621 and 1622, Comp. Laws, which authorized the sale only for the amount due. The statutory power to sell for lawful taxes, if exceeded by including unlawful items, renders the sale void from the manifest impossibil-ity of saving the sale in part when the invalidity extends to the whole. Cooley on Taxation, 497; *Baker* v. *Supervisors,* 39 Wis. 447; *Mileage* v. *Coleman,* 47 Wis. 184; *Kimball* v. *Ballard,* 19 Wis. 634; *Barden* v. *Supervisors,* 33 Wis. 447; *Harper* v. *Rowe,* 53 Cal. 233; *Wills* v. *Austin,* 53 Cal. 152; *Fredweld* v. *Peterson,* 51 Cal. 637; *Case* v. *Dean,* 16 Mich. 12; *Riverside* v. *Howell,* 113 Ill. 259; *Gage* v. *Plumpelly,* 115 U. S. 462. The land was not assessed in the name of the owner, and it was not assessed to unknown owners, hence the pretended assessment was void. *Sweigle* v. *Gates,* 84 N. W. Rep. 481, 9 N. D. 538. The assessment was not verified. § 1551, Comp. Laws. An affidavit must appear on its face to have been taken·in compliance with the legal requisites. Without a venue an affidavit

is a nullity, though sworn to before an officer whose residence is mentioned in the jurat. *Cook* v. *Statts,* 18 Barb. 407; *Lane* v. *Morse,* 6 How. Prac. 394; *Thompson* v. *Burhaus,* 61 N. Y. 52; *Ladow* v. *Groom,* 1 Denio 429. In possessory actions between the holder of the tax title and the patent title, where the interests of private parties are involved, the rule of caveat emptor applies in all its strictness. Courts are careful that no man be deprived of his property through tax proceedings that are not in all respects in substantial compliance with the statutory requirements. *Sweigle* v. *Gates,* 9 N. D. 538, 84 N. W. Rep. 482; *Farrington* v. *Insurance Co.,* 1 N. D. 119; *March* v. *Supervisors,* 42 Wis. 518; *Gautzhausen* v. *Kachler,* 42 Wis. 332; *Morrill* v. *Taylor,* 6 Neb. 236; *Clark* v. *Crane,* 5 Mich. 151, 71 Am. Dec. 776; *Van Rensellaer* v. *Weltbeck,* 7 N. Y. 401; *Silsbee* v. *Stockle,* 44 Mich. 461; *Dickenson* v. *Reynolds,* 48 Mich. 158; *Brevoort* v. *Brooklyn,* 89 N. Y. 128; *McClure* v. *Warner,* 16 Neb. 448; *Plummer* v. *Marathon County,* 46 Wis. 179; *People* v. *Giles,* 68 N. Y. 326. The assessment is defective because it does not show the year for which it was made. § 1582, Comp. Laws. The sale is void because the land was not described on the tax list sufficiently. *Power* v. *Bowdle,* 3 N. D. 107; *Power* v. *Larabee,* 2 N. D. 141; *Hegar* v. *DeGroat,* 3 N. D. 354. The sale was made without a tax warrant. § 1596, Comp. Laws; Cooley on Taxation, 424. There is no evidence that the land was ever advertised for sale. The burden of making such proof was on plaintiff. The tax deed lost its character as evidence when it appeared that in an essential particular the tax proceedings on which it depended were irregular. *O'Neil* v. *Tyler,* 3 N. D. 47; *Lacey* v. *Dows,* 4 Mich. 140; *Case* v. *Dean,* 16 Mich. 12; *Cooper* v. *Sheperdson,* 51 Cal. 209; *Bidleman* v. *Brooks,* 28 Cal. 75; *Thompson* v. *Ware,* 43 Ia. 453; *State* v. *Tax Cases,* 15 Wall. 306; *French* v. *Edwards,* 13 Wall. 514; Blackwell on Tax Titles, 83; 2 Desty on Taxation, 961, 969; *Johnson* v. *Elwood,* 53 N. Y. 431.

WALLIN, C. J. This action is brought to recover the possession of land situated in the town of Berlin, in Cass county, described as follows: "The southwest quarter of the southeast quarter of section 32, in township 141, of range 50. The complaint states that the plaintiff is the fee-simple owner of the land, that the defendant is unlawfully in possession thereof, and that he unlawfully withholds such possession from the plaintiff. The answer denies the plaintiff's allegation of ownership, and alleges, as a counter claim, that the defendant owns the land in fee simple; and defendant demands, as affirmative relief, that the title be quieted in the defendant. Plaintiff, by way of reply, denies the allegations of the answer, and alleges that the defendant is barred by the statute of limitations from asserting any defense against the plaintiff's title. Defendant offered no evidence of title, but it is conceded that the defendant was in possession of the land when the action was commenced, and had been in possession

for cropping purposes for several years before the suit was instituted. It appears, also, that the land was assessed in 1888 in the name of the defendant, and had been so assessed for several years prior to 1888. The plaintiff's title depends solely upon a tax deed which was delivered to plaintiff's grantor by the county treasurer of Cass county. The deed was put in evidence by the plaintiff, and it bears date January 15, 1892, and was recorded on February 8, 1892. The deed purports to be based upon a tax sale made in 1889 for the taxes assessed against the land in 1888. Plaintiff rested his case after putting the tax deed in evidence together with a deed of quitclaim from plaintiff's grantor to the plaintiff.

The sole contention arises upon the validity of the tax deed. At the trial defendant sought to impeach the tax deed as evidence of title in the plaintiff, and for this purpose defendant put in evidence certain records connected with the assessment and sale of the land for the taxes of 1888. The assessor's return for the town of Berlin, so far as the same related to the land in question, was put in evidence. Attached to the return was an affidavit of the assessor. At the top of this paper the venue of the affidavit is stated as follows: "Territory of Dakota, County of Cass." The affidavit purports to have been made by one C. A. Gardner, assessor in and for the town of Berlin. The body of the affidavit is not criticised. It is subscribed as follows: "C. A. Gardner, Assessor." The certificate or jurat, which follows the signature is as follows: "Subscribed and affirmed to before me this 28th day of January, 1888. S. M. Edwards, Town Clerk." The tax list for the taxes of 1888, as turned over to the treasurer for collection, as far as the same relates to this land, was introduced in evidence. The land in question was described in the list as follows: "S. W. 4 of S. E. 4 of section 32, town 141, range 50." As has been seen, the affidavit annexed to the assessor's return showed by its venue that the oath was taken within the territory of Dakota, and in the county of Cass, but failed to show the town in which the oath was administered, or that it was administered within any town. Counsel for the respondent contends that the return is not shown to have been verified by affidavit, as required by section 1551, Comp. Laws 1887. This contention is important in this jurisdiction, for the reason that the rule is established here that the affidavit of verification is essential to the validity of an assessment return. See *Eaton v. Bennett,* 10 N. D. 346, 87 N. W. Rep. 188, and cases cited. But we cannot assent to the proposition of counsel that the return in this case was not verified. The strict rule established by the earlier cases, and that which still seems to obtain in the state of New York, is that an affidavit, to be valid, must show on it face that the oath was administered within the territory in which the officer who administered it had authority to act officially. See cases in 1 Enc. Pl. & Prac. p. 313. But this rule has been relaxed in many states. See *State v. Henning,* (S. D.) 54 N. W. Rep. 536, and numerous cases there cited. The modern and more liberal rule, as laid down in the cases

cited, meets our approval. This rule requires this court to presume, prima facie, that the officer administering an oath acted in doing so within his territorial jurisdiction. The authority of town clerks to administer oaths is expressly conferred by statute. Comp. Laws 1887, § 776. In this case no testimony was offered to show that S. M. Edwards, in administering the oath, acted outside of his town; and, under the more liberal rule, we shall indulge the presumption which supports the validity of the affidavit.

But the jurat of this affidavit presents another defect, which, in our judgment, is much more serious. The jurat is as follows: "Subscribed and affirmed to before me this 28th day of January, 1888." The date of the affidavit, as stated in the jurat, if it be the true date shows beyond doubt or question that the assessor's return of 1888 was not in fact verified by the oath or affirmation of the assessor. It is physically as well as legally impossible that it should have been verified on January 28, 1888. No assessment for the year 1888 could have been lawfully made and incorporated in the return as early as January 28, 1888. Assessors were expressly forbidden to commence the assessment before the first day of May of each year. Comp. Laws 1887, § 1546. Whether the law would permit so important a record as the return of an assessor to be corrected by evidence aliunde is very doubtful, but this need not be discussed in the case at bar, as no evidence was offered for this purpose. It might be argued that the error is an obvious clerical error, and that this court should so construe it, in favor of the tax-title holder. But, in our opinion, this course is not open to the court. If we should by our construction of the language of the jurat expunge the date (January 28, 1888), the affidavit would then be devoid of a date, and from it, therefore, no one would be informed whether the affidavit was affixed to the return at or prior to the date of filing the same with the county auditor or whether it was affixed at some later date in that year or in some subsequent year. Nor could this court in the absence of testimony upon the point, venture to insert some other date in the jurat in lieu of that actually stated. Besides, it should not be overlooked that all tax proceedings are in theory and in fact in invitum and ex parte. The rule is well settled that all the essential steps of the process of taxation must appear upon some record, and the further rule is equally well established that a bidder at a tax sale is chargeable with notice of all defects in tax proceedings which lead up to and include a tax sale. We are therefore driven to the conclusion that this record shows that the assessor's return for the year 1888 was not verified. This omission compels the court to hold, under the rule laid down in *Eaton* v. *Bennett,* supra, that the alleged assessment of the land was and is void.

But this court has reached the further conclusion that the tax deed is invalid for other and independent reasons. The deed shows on its face that it was issued pursuant to a tax sale made by A. H. Burke, as county treasurer, and the deed recites, in effect that said

treasurer issued a tax sale certificate to the plaintiff's grantor, who was the purchaser at the sale, and from which certificate it appears that the land was sold for the sum of $6.92, and that such sale was made for "the taxes, costs, and charges for the year 1888." It is our opinion that the evidence in this record shows, when read in the light of the statute then in force, that the land could not have been lawfully sold for so large a sum. The total tax, with interest and penalty added, charged against the land, as shown by the treasurer's tax list, was $5.26. To this the treasurer could lawfully add only such "costs and charges" as the statute authorized the treasurer to collect and receive from the purchaser. We do not find authority in the statute authorizing the treasurer to collect any sum or sums over and above the tax proper, with interest and penalty added, except the sum of 20 cents for advertising, and the further sum of 50 cents for the tax certificate. These charges seem to be legitimate, and we find none others which are so. See Comp. Laws 1887, § § 1620, 1627. The total of the costs and charges cannot, we think, exceed 70 cents. This total, when added to the original tax, with interest and penalty included, makes an aggregate of $5.96, which sum, when deducted from the amount for which the land was actually sold, leaves a difference of 96 cents. In brief, we find, under the law, from a consideration of the evidence, that the treasurer sold this land for the amount of 96 cents more than the aggregate taxes, costs, and charges legally due at the time of the sale. From this fact we deduce the conclusion, as a matter of law, that the sale was illegal and void; and the further conclusion must follow that the tax deed, which rests upon such illegal tax sale, is of no legal validity. It is a firmly established rule of law that a tax sale of lands for an amount in excess of all sums legally chargeable against the same renders the sale wholly illegal. This salutary and most important rule of law is laid down by Judge Cooley as follows: "And, if a valid levy were to be increased afterwards by unlawful additions, the sale would be equally bad. The statutory power is a power to sell for lawful taxes and lawful expenses, and, if it is exceeded by including unlawful items of either class, the power is exceeded, and its exercise is invalid in toto, from the manifest impossibility of saving the sale in part when the invalidity extends to the whole." Cooley, Tax'n (2d Ed.) p. 497, and cases in note 2. See, also, Desty, Tax'n p. 972, and cases there cited. But this rule of law is so entirely elementary that we deem further citation of authority in its support to be unnecessary.

We turn to another question which arises upon this record. It appears that the parcel of land in dispute was described in the tax list as certified to the county treasurer for collection, as follows: "S. W. 4 of S. E. 4 of section 32, town 141, range 50." It further appears that the tax charged against this description was never paid, and that to collect the same, with certain costs and charges added, the county treasurer sold the land on November 4, 1889. Before

such sale or any tax sale could have been lawfully made, a legal notice of sale was an essential prerequisite; and the statute regulating the sale required that the notice of sale, as published, should embrace a "list of the land to be sold." Comp. Laws 1887, § 1620. This provision of the statute makes it imperative that the notice of sale should contain a description of the lands to be sold. Its purpose is to identify the particular tracts of land to be sold at public sale, and the provision is obviously one intended to benefit the taxpayer. If complied with, the owner, as well as the general public, will be seasonably advised of the contemplated sale of lands so advertised. These provisions are uniformly construed by the courts as mandatory enactments and this court has recently decided that a published notice of a real estate tax sale which was invalid in this, that it did not sufficiently describe the land in dispute, conferred no authority to sell such land, and, further, that any deed issued upon such illegal sale would necessarily be null and void. *Sweigle* v. *Gates,* 9 N. D. 538, 84 N. W. Rep. 481. That case was decided under the statute which governed the sale in the case at bar, and the case cited was a much stronger case than this, for the reason that the statute of limitations would have barred that action if it had ever been set in motion. In the case at bar the statute of limitation (§ 1640, Comp. Laws 1887) has no application, and hence any safeguards founded upon the provisions of that section cannot be invoked in aid of the plaintiff's tax deed. It will be conceded that the county treasurer, in selling the land at tax sale, derived his authority to sell from the certified tax list sent to him by the county commissioners, and that he had no authority to sell any piece or parcel of land unless the same was described in such tax list. If the land in question was sufficiently described in the list, and if the taxes charged against the same were not paid, the land could have been sold by the treasurer for such delinquent taxes; otherwise it could not be lawfully sold for taxes. Under the authority of numerous cases decided in this court, we are compelled to hold that the attempted description of the land involved, as found in the treasurer's tax list, was insufficient as a description of land, and as such the descriptions, when published in the notice of sale, did not sufficiently describe or identify the land advertised to be sold. See *Power* v. *Larabee,* 2 N. D. 141, 49 N. W. Rep. 724, and *Same* v. *Bowdle,* 3 N. D. 107, 54 N. W. Rep. 404, 21 L. R. A. 328, 44 Am. St. Rep. 511. In publishing the notice of tax sale the treasurer is limited to lands described in the list, and is also governed by the descriptions of the parcels which are contained in the list, and hence we shall assume that the land was in fact described in the notice as it was described in the list. If evidence had been offered in this case showing that the land was in fact properly described in the notice of sale, a different question would have been presented, but no such evidence was offered. But counsel argue that when this court decided the cases last cited it was considering assessments, and was

not passing upon the validity of any tax sale. This is true. But in the case at bar we are called upon to determine whether an attempted description of land which this court has held to be insufficient for the purposes of assessment is or is not sufficient to describe and identify the land in a notice of tax sale. From our point of view, the reasoning upon which the former cases rest applies with equal, if not greater, force to a published notice of sale, and therefore we shall refrain from reiterating here the grounds upon which we place our ruling upon this branch of the case.

But counsel cite the case of *Iowa & D. Land Co.* v. *Barnes Co.,* 6 N. D. 601, 72 N. W. Rep. 1019, and argue that this court held in that case that it was neither a "mistake nor wrongful act" upon the part of a county treasurer to sell land at a tax sale upon descriptions similar to that found in this case. But this case, as we view it, is not at all in point. We were not passing in that case upon the validity of any tax deed as such, or upon the validity of any tax sale as such. We held in that case that the county treasurer could not be held responsible under the statute for sales of land so described, because he did not fabricate the descriptions, and was not responsible for the same. But counsel for the appellant, in a brief filed in this court, embracing 36 printed pages, have bestowed comparatively little attention upon the question whether the irregularities in the tax proceedings which appear in this record are of a serious character or otherwise, or whether they exist in fact, or do not exist. This indifference of the appellant's counsel to the irregularities pointed out by counsel for the respondent is, however, explained by the fact that, from the standpoint of the plaintiff's counsel, such irregularities, if they exist at all, have been wiped out by curative legislation enacted, or which could be enacted, for the express purpose of curing all such irregularities as are here complained of. Counsel cite *Roberts* v. *Bank,* 8 N. D. 504, 79 N. W. Rep. 1049, as sustaining the general proposition of law that a tax sale operates as a contract, in which the law governing the same enters as a constituent part. To this proposition we assent. But counsel's next premise is that the contract made by the tax sale in question was a contract between the purchaser and the territory of Dakota, and hence was and is a contract governed by the law in force during the territorial regimen, and hence that such law is in no respect hampered by any restrictions upon legislative action which may be found in the constitution of the state of North Dakota. To this proposition we may not assent, for the reason that it involves a mistake of fact. The tax sale in question was made on November 4, 1889. At that time the state of North Dakota had emerged from a condition of territorial vassalage, and was in the full enjoyment of its status as a sovereign state of the Federal Union. See section 11 of the state constitution; also the proclamaion of the president of the United States admitting the state of North Dakota into the Union; Rev. Codes 1895, p. 55. It therefore appears that the contract resulting from the tax sale

was one which was made with reference to provisions found in the statute which were not in conflict with the organic law of the state. But for all the purposes of this case it may be conceded that the sale was made during the territorial period. Such a concession, in our judgment, would yield nothing to the plaintiff's advantage. It is the chief postulate of counsel for the appellant in this case that during the territorial status no restrictions existed either in the constitution of the United States or in the organic law of the territory, as framed by congress, which in any manner limited the power of either the territory or congress in the matter of enacting curative statutes sweeping in character, and sufficient to cure and wipe out any irregularities in tax proceedings such as are claimed to exist in this case. And counsel seem to cling to this postulate as a veritable anchor of hope. But, from our standpoint, this assumption of counsel, if it were to be conceded as sound, is wholly worthless unless it is followed up by a showing that this vast and almost omnipotent legislative power which is claimed to exist in congress and in the territorial legislature has been exercised in fact. Dormant power never put forth is not sufficient, and cures nothing. Counsel must put his finger upon the statute existing at the time of the sale, or since enacted, which embraces any curative legislation upon which he relies to cure the irregularities in the tax proceedings in question. Counsel seems to take it for granted that the law in force at the time of the sale embraced curative provisions under which the tax deed upon which the plaintiff depends must be upheld as a valid conveyance of title. Still, counsel has cited no such provisions of the statute, and, if any existed at the time of the sale, we have failed, after a diligent search to discover the same. Nor have we overlooked § § 1638, 1639, and 1640 of the Compiled Laws of 1887. As has been seen, § 1640 has no application to the case at bar. Section 1638 authorizes a county treasurer to execute a deed in fee simple pursuant to a tax sale, but it goes without saying that this language simply means that the treasurer can execute such a deed only in cases where, under the law governing the sale, he has power to do so. This limitation is in fact clearly expressed in the statutory form of deed in its habendum clause. See § 1639. But the last section cited does contain provisions upon which counsel no doubt rely as curing the irregularities existing in the tax proceedings which culminated in the plaintiff's deed. Said section makes a tax deed evidence. As to mere facts, as such, when recited in a tax deed, the deed is made conclusive evidence. Just what facts are here referred to need not be particularly pointed out, for the reason that the legislature has evinced a clear and unmistakable purpose not to make a tax deed conclusive evidence of either title or the regularity of the tax proceedings upon which the deed issues. The very explicit declaration of the lawmaker is to the contrary effect. It reads as follows: "Such deed shall be * * * prima facie evidence of the regularity of all the proceedings from the valuation of the land by the assessor up to the

execution of the deed." Thus it appears that the territorial legislature very properly refrained from any attempt to make a tax deed conclusive evidence either of title or of the regularity of the tax proceedings antecedent to the delivery of the tax deed. From this statute we can gather no intent to make a void or voidable tax deed a valid conveyance of title. It is evident that such was not the legislative purpose. The legislature in passing this statute intended to go and did go no further than to enable the holder of a tax deed to make out a prima facie title under the deed by putting the same in evidence. Such a statute is not a curative statute, and does not purport to be such, except as to certain mere formal matters of fact, and as to such matters of fact the deed cannot be held to be conclusive if the same in any wise relate to any step involving the validity of the tax proceedings. It is true that where the bar of a statute of limitations has fallen the courts will not allow mere irregularities to defeat a tax deed. But in this case the bar of the statute has not fallen as against the plaintiff's right to institute the action. Nor can the defendant in this action be debarred by said statute from showing by competent testimony that the tax proceedings are either irregular or wholly void, and thereby defeating the plaintiff's prima facie title under his tax deed. This, as we have seen, the defendant has done, and hence the judgment of the trial court dismissing the action must be affirmed. All the judges concurring.