(109 N. W. 335.)

---

A. L. BEGGS v. J. A. PAINE.

Opinion filed May 15, 1906. Rehearing denied October 16, 1906.

**Tax Deed — Taxation — Validity.**

1. A tax deed issued pursuant to a tax sale under chapter 132, page 376, Laws 1890, is void if it fails to state any one or more of the facts which a deed in the form prescribed by section 7, chapter 100, page 271, Laws 1891, should show.

**Same — Evidence of Valid Sale.**

2. A tax deed which does not substantially comply with the form prescribed by law for such a deed is not prima facie evidence of a valid tax sale, and does not set in motion those statutes of limitation which bar actions to set aside tax sales without adverse possession.

**Same — Purchaser at Tax Sale — Rights Acquired.**

3. A purchaser at a valid tax sale pursuant to chapter 132, page 376, Laws of 1890, acquired actual ownership of the land sold as soon as the right of redemption had been terminated, even though a deed in proper form had not been delivered to him. (Young, J., dissenting.)

**Appeal — Reversal — Objections Not Raised Below.**

4. Where the record on appeal under section 5630, Rev. Codes 1899, shows that a tax deed was by both parties and the trial court

assumed to be sufficient in form and accordingly prima facie evidence of title and attention is not called to the formal insufficiency of the deed until the argument on appeal, this court will grant a new trial to afford the party claiming under the deed an opportunity to establish his right by other evidence. (Young, J., dissenting.)

### Taxation — Tax Certificate — Invalidity.

5. Where a certificate holder has in proper time obtained a tax deed which is good on its face according to common law rules, but does not conform to the statutory form, and is therefore void on its face, the certificate is not barred by chapter 165, page 220, Laws 1901.

### Same — Assessment Roll — Description of Property.

6. The abbreviation "N. W." in the column headed "Part of Section," was sufficient to identify the land as the northwest quarter of the section named in the assessment roll. Power v. Bowdle, 54 N. W. 404, 3 N. D. 107, 21 L. R. A. 328, 44 Am. St. Rep, and Power v. Larabee, 49 N. W. 724, 2 N. D. 141, distinguished.

### Same — Assessment Roll — Failure to Verify.

7. A tax sale made in 1896 under the revenue law contained in the Revised Codes of 1895, was void if based on an assessment roll which was not verified by the required assessor's affidavit; but that defect did not invalidate the taxes for which the sale was made so as to warrant a cancellation of such taxes in the absence of any claim that same were unjust.

### Same — Evidence.

8. The assessment roll was produced, and there was no assessor's affidavit attached to it, and there was no indication that any had ever been attached. The auditor testified that there was nothing to indicate that such affidavit had ever been in his office. *Held,* sufficient prima facie proof that the assessor had neglected to attach his affidavit to the assessment roll.

### Constitutional Law — Vested Rights — Purchaser at Tax Sale.

9. The right of a tax sale purchaser at a sale in 1896 to a lien for taxes paid, guaranteed to him by section 1273, Rev. Codes 1895, was a right which could not. be impaired by subsequent legislation (Young, J., dissenting.)

### Highways — Road Taxes — Valid Levy

10. A percentage levy of road taxes by township authorities, based on the assessment roll of the previous year, was a valid levy.

### Taxation — Certificate of Sale.

11. A certificate of sale issued on a tax sale in 1897, which shows that one acre was sold out of a quarter section, but does not identify the particular acre referred to, is void.

**Same — Execution Under Seal.**

12. A tax sale certificate for a sale under the present revenue law need not be executed under seal. The omission of a seal is not a substantial departure from the statutory form, because the county auditor has no official seal.

**Same — Setting Aside Tax Sale.**

13. Section 1263, Rev. Codes 1899, construed and *held,* under the provisions of this section, the failure of a person affected by the tax sale to seek relief from irregular tax proceedings before the tax sale operates as a complete bar to any relief unless the defect complained of is one or more of the objections specified in the section, or is some jurisdictional defect which it is beyond the power of the legislature to remedy by a curative act or bar by a limitation statute not requiring adverse possession. (Young, J., dissenting.)

**Same — Notice of Sale.**

14. In the notice of delinquent tax sale, which was otherwise sufficient, the words "Amount of Sale" appeared over the column in which were stated the sums for which each tract was to be sold. The notice clearly showed what was intended, and the words were not misleading. *Held,* the notice was good.

Appeal from District Court, Dickey county; *Lauder, J.*

Action by A. L. Beggs against J. A. Paine. Judgment for plaintiff, and defendant appeals.

Reversed and remanded.

*Newman, Spalding & Stambaugh,* for appellant.
*C. W. Davis* and *W. F. Mason,* for respondent.

ENGERUD, J. This is an action in statutory form to quiet title to a quarter section of land in Dickey county, of which land the plaintiff claims to be the owner in fee. The defendant, in his answer, claims to have acquired title to the land by virtue of certain tax deeds; and also sets up certain tax sale certificates held by him thereon, upon which deeds have not yet been issued. The trial court found that each of the various tax sales upon which the defendant relied were invalid, and judgment was accordingly entered quieting the title of the land in plaintiff. The defendant has appealed to this court and demands a new trial of the entire case on a statement of the case duly settled for that purpose.

Each of the six tax sales upon which defendant relies is alleged as a separate defense, numbered in chronological order.

The first defense is a sale in 1890, for the taxes of 1889, upon which a tax deed was issued in 1894. The second is a sale in 1891, for the taxes of 1890, upon which a deed was received in 1895. The third alleges a sale in 1896, for the taxes of 1895, and a deed issued thereon in 1901. The fourth, fifth and sixth defenses are based, respectively, on sales in 1899, 1900 and 1901; each being for the tax of the preceding year, on none of which sales any deed has been issued. The appellant has abandoned all claims under the deed of 1895, for the taxes of 1890, because it is conceded that the assessment was void for want of any sufficient description of the property. The tax deed issued in 1894 on the sale of 1890 is void on its face because it does not conform in substance to the form prescribed by the statute for such a deed. It varies from the statutory form in several particulars, some of which are not material and need not be mentioned. The sale was made under the revenue law of 1890 (chapter 132, p. 376, Laws 1890). The form of deed is prescribed by section 7, c. 100, p. 271, Laws 1891, which was enacted to supply the omission in that respect in the law of 1890. That law required that the tax deed should "substantially" conform to the form therein prescribed. One of the recitals in the statutory form is a statement of the amount for which the premises were sold. This deed fails to state the amount for which the land was sold, and there is nothing on the face of the deed from which that amount can be ascertained. It is well-settled law that where the statute prescribes the form of a tax deed, even though it requires only a substantial conformity thereto, a deed which omits to show any one or more of the facts which the statutory form should disclose, is void. This is so, because the statute, by prescribing the form, has thereby made every fact recited in the form a matter of substance. It is only those deeds which conform in substance to the statutory form that are made evidence of anything; and it is only such a deed that can set in motion those statutes of limitation which bar actions to set aside tax sales without adverse possession. Blackwell on Tax Titles, section 773; Simmons v. McCarthy, 118 Cal. 622, 50 Pac. 961; Gilfillan v. Hobart, 35 Minn. 185, 28 N. W. 222; Vanderlinde v. Canfield, 40 Minn. 541, 42 N. W. 538; Lain v. Shepardson, 18 Wis. 59; Salmer v. Lathrop, 10 S. D. 216, 72 N. W. 570; Hegar v. De Groat, 3 N. D. 354, 56 N. W. 150. This deed was the only evidence offered by the defendant in support of his alleged

title under the sale of 1890. The deed being void on its face, proves nothing except its own execution. When the deed was offered in evidence, plaintiff's counsel objected to its admission on the ground that it was not in proper form. In answer to the trial court's request to specify the alleged defect in form, counsel stated that he was not certain that there was any defect, and that he would not put in any specific objection, as he was not then prepared to do so. It is needless to say that such an objection is of no avail. It is apparent that counsel did not notice the defect in form. We cannot believe that he was guilty of bad faith in the matter.

This objection to the deed seems to have been urged for the first time in this court. If it went merely to the technical sufficiency of the proof, we would hold that the objection was waived. It is not, however, a case where merely incompetent evidence has been admitted without objection to prove a given fact, but is rather a case where there is no evidence to prove the fact alleged. It is clear from the record, however, that counsel for both parties as well as the trial court, did not notice the defect in form, but assumed that the deed was sufficient in form to have the evidentiary force given to it by the statute; and the burden of proof was thereby cast upon the plaintiff to establish some irregularity in the proceedings sufficient to invalidate the same. It is fair to presume that if the point now raised with respect to the insufficiency of this deed had been raised at the trial, other evidence than the deed would have been offered in support of defendant's case. We think the record presents a case where, by reason of mutual misapprehension and mistake at the trial, the accomplishment of justice demands a new trial of the issues raised by that part of the answer which pleads title under this sale of 1890. Paine v Dodds, 14 N. D. 189, 103 N. W. 931.

This presents the question as to whether or not, in case the defendant shall be able to prove on the new trial a valid tax sale, and that the time for redemption has been terminated, he can thereby establish his title to the property, even though he has no valid deed. It is necessary to decide this question, because, if the invalidity of the deed precludes inquiry into the validity of the antecedent proceedings, there is no need for a new trial. We think the question should be answered in the affirmative. Under the statute by virtue of which the sale in question was made, the pur-

chaser at the sale was entitled to receive a deed conveying to him the title in fee of the premises sold after the expiration of three years and the termination of the redemption right by the service of a notice of the time when the right to redeem would expire. Section 103, c. 132, p. 414, Laws 1890. Unlike the revenue laws of 1896 (section 1264, Rev. Codes 1895), and the territorial revenue law (section 1635, Comp. Laws 1887) under which the right to redeem did not expire until the deed was actually issued, the law of 1890 provided that the right to redeem was terminated absolutely after the expiration of sixty days from the date of the service of the notice of the expiration of redemption, provided at least three years had expired from the day of sale. On and after the sixty-first day from the date of the completion of the service of the redemption notice, provided three years had expired since the sale, the former owner's rights were gone forever, whether the deed had yet been issued or not. The right to the possession and to the rents and profits passed to the purchaser at the expiration of three years from the sale, even though no deed had been issued, and even though the redemption right had not been terminated. Section 83, c. 132, p. 407, Laws 1890.

Assuming, then, that the proceedings were all regular and that more than sixty days had elapsed since the service of the notice of expiration of redemption, but no deed had issued, we would have a case presented where the former owner, although nominally holding the naked record title had lost all his proprietary rights, including the right to redeem, and the tax sale purchaser had become vested with all the rights of an owner and entitled to a deed transferring the record title. Unless we are to regard form as superior to substance, it is manifest that the purchaser must be held to be the owner. The conditions are analogous to those existing in the case of Smith v. Security Loan & Turst Co., 8 N. D. 451, 79 N. W. 981, where this court held that one who merely holds the nominal title without any proprietary rights has no real title or right. It is clear that it can make no difference in the application of the principle whether the conditions under which that doctrine applies are brought about by contract or by operation of law. It is true that the statute, in speaking of the deed, says that such deed shall vest the title in the grantee. Chapter 110, p. 283, Laws 1891. This must be taken to refer to the nominal or apparent record title, because it is clear, from the reading of the law as a whole,

that the actual substantial title or rights of ownership pass to the purchaser by operation of law as soon as the former owner's rights are terminated. The termination of those rights must necessarily, under the terms of the law, precede the execution and delivery of the deed. There must necessarily be a greater or less interval of time elapsing between the termination of the former owner's rights and the delivery of the deed. It is inconceivable that the actual ownership is vested in no one, even for an instant of time. If the proceedings were regular, the defendant was entitled to a deed, and could compel the delivery thereof by mandamus if the officer refused to execute it. Blackwell on Tax Titles, section 1073. The title evidenced by such a deed subsequently executed would relate back to the time when the grantee was entitled to receive the deed. Blackwell on Tax Titles, section 793 et seq. In Brigins v. Chandler, 60 Miss. 862, the grantee in such a case was permitted to show by parol that he was entitled to the deed, and hence had the title on a day earlier than the date of the execution of the deed. As said by the chancellor, in Bank v. Mersereau, 3 Barb. Ch. (N. Y.) 528, 578, 49 Am. Dec. 189: "If this * * * error in the form of the * * * deed was now material, it would not justify a court of equity in declaring that the purchaser had no right to the land by virtue of his purchase." In the case of Lock-wood v. Gehlert, 127 N. Y. 241, 27 N. E. 812, it was held that the purchaser acquired no title until the execution and delivery of the deed; but that decision was based upon a statute similar to the tax laws of this state before 1890, and like the law of 1896, above mentioned, under which the rights of the former owner were not barred until the execution and delivery of the deed.

It is urged that if the deed is void, then the certificate is outlawed by chapter 165, p. 220, Laws 1901. This enactment amends section 1269, Rev. Codes 1899, relating to the rights of the holders of tax sale certificates, by adding thereto the following proviso: "Provided, however, that all rights of such purchaser and his assigns to possession, title, or lien of any kind of, to or upon such piece or parcel of land, shall cease absolutely and be deemed forfeited and extinguished, unless possession thereof be taken by him, or them, or proceedings for such possession be by him or them instituted, or deed therefor be executed and delivered to him or them by the proper officer prior to the expiration of six years from and after the date of such certificate, or in case of sales here-

tofore made, and where five years or more have already elapsed since the date of such certificate, then prior to the expiration of one year after the taking effect of this section." It is conceded that possession was not taken under the certificate. Respondent contends that, because the deed is void on its face, therefore it was "no deed," and hence the certificate is barred. This, we think, is too strict a construction. The effect of that law and its plain intent is to require certificate holders to actively assert their rights under the certificate within the given time by either taking or suing for possession, or by securing a deed. Failure to do so in the time required is in effect deemed conclusive evidence that the certificate holder has abandoned all his rights. The law is constitutional. State Finance Co. v. Mather (just decided) 109 N. W. 350. Does the term "deed," as used in this act, mean a deed conforming in all things with the statutory form? We think not. We think the word "deed" was used by the legislature in its ordinary, popular sense, namely, an instrument purporting to convey the land pursuant to a tax sale and which, when tested by the common-law requirements, would, on its face, be sufficient for that purpose, even though void either by reason of extrinsic facts, or by reason of nonconformity to the statutory form. This construction gives effect to the legislative intent. The expression often used that a void deed is "no deed" is merely one of those trite sayings which, although correctly expressing a rule applicable under some circumstances, may be entirely false under different conditions. It is not a maxim or rule of general application. The trial court held that this deed and the taxes upon which it was based were void, on the ground that there was no assessment upon which to base the taxes for 1899, for which the premises were sold, because, as it held, the premises were not sufficiently described in the assessment roll. The description of the land in question in the assessment roll was in the following form:

| Owner's Name. | Part of Section | Sec. | Twp. | Range | Acres |
|---|---|---|---|---|---|
| Dawson Philip | N. W. | 32 | 130 | 64 | 160 |

The propriety of using abbreviations in describing property for taxation is well settled, and is not now questioned. It is asserted, however, that the letter "N. W." in the column headed "Part of Section," are unintelligible, and cannot be said to mean

"northwest quarter." It is contended that the decisions in Power v. Bowdle, 3 N. D. 107, 54 N. W. 404, 21 L. R. A. 328, 44 Am. St. Rep. 511, and Power v. Larabee, 2 N. D. 141, 49 N. W. 724, are decisive of the case at bar. We do not think so. Those decisions have established a rule of property in this state from which we cannot now depart, but we are not disposed to extend the ruling in those cases to cases not within the express terms of those decisions. The point upon which those decisions held the abbreviations there involved, to be void, was the fact that the letters indicating the subdivisions of the section were followed by whole numbers instead of fractions. The court declined to assume, or permit proof to show, that the figures "2" or "4" used in that way were commonly understood to mean $\frac{1}{2}$ or $\frac{1}{4}$, respectively. In other words, it was there held that it was the "combination of letters and figures" which was unintelligible. We have no hesitation in holding that the description in this assessment roll is as perfectly intelligible to any person of common understanding, as it would be if written out in full. "N. W." is the abbreviation which means "Northwest" wherever the English language is written. The northwest part of section 32, in the stated township and range, belonging to Philip Dawson, and containing 160 acres, specifically and clearly identifies the land in question, and could not reasonably be applied to any other tract than the northwest quarter of the section in question. The description was therefore sufficient.

The sale of 1896, which is the basis for the deed of 1901, set forth in the third defense, is also invalid. The assessor failed to attach to the assessment roll any sufficient affidavit as required by section 41, c. 132, p. 391, Laws 1890, under which law the assessment and levy were made. We think the evidence was sufficient to prove that the assessment roll had not been verified. The assessment book was identified by the officer in whose custody it was. There was no assessor's affidavit attached to it and no indication that any had ever been attached. It was also shown that there was nothing to show that such affidavit had ever been in the auditor's office. The law required the affidavit to be attached to the assessment book and when it was shown by the official custodian that no affidavit could be found, there was sufficient prima facie evidence that none ever was attached. Iverslie v. Spaulding, 32 Wis. 394; Hiles v. Cate, 75 Wis. 91, 43 N. W. 802. This defect is fatal to the sale. Eaton v. Bennett, 10 N. D. 346, 87 N. W. 188.

Section 72, c. 132, p. 404, Laws 1890, had been repealed by the Revised Codes of 1895, before the sale in question was made and there was no provision of law in force when the sale was made which rendered this defect immaterial. This defect, however, does not furnish any ground for canceling the tax itself. Douglas v. City of Fargo, 13 N. D. 467, 101 N. W. 919; Twinting v. Finley, 55 Neb. 152, 75 N. W. 548. Section 1261, Rev. Codes 1895, under which this sale was made, provides that the purchaser at the tax sale "acquires the lien of the tax on the land, and if he subsequently pays any taxes levied on the same, he shall have the same lien for them and may add them to the amount paid by him in the purchase." Section 1273 of the same Code provides: "Whenever any action or proceeding shall be commenced and maintained before any court or judge * * * to recover the possession or title of any property, real or personal, sold for taxes, or to invalidate or cancel any deed or grant thereof for taxes * * * the true and just amount of taxes due upon such property * * * must be ascertained and judgment rendered and given therefor against the taxpayer, and, if the tax is delinquent, execution must be issued forthwith for the same." These provisions of the law, then in force, entered into and formed part of the contract of sale. They provide the only remedy afforded to the purchaser at the tax sale to recover the money paid out by him in reliance upon a tax sale which might afterwards prove to be invalid, for any reason other than that specified in section 1272, Rev. Codes 1895. This was clearly a right which could not be impaired by subsequent legislation. These two sections must, therefore, be deemed to be still in force in favor of purchasers under the revenue law of 1896. Fisher v. Betts, 12 N. D. 197, 96 N. W. 132; Paine v. Dickey County, 8 N. D. 581, 80 N. W. 770; McHenry v. Brett, 9 N. D. 69, 81 N. W. 65.

The defendant's alleged title having failed, he was entitled to a judgment establishing and foreclosing his lien for the taxes paid by reason of this sale. It is true that the defendant did not specially pray for this relief. This is a suit in equity. Tracy v. Wheeler (just decided) 107 N. W. 68. The answer pleads a counterclaim, and, as is usual in equity cases, in addition to the prayer for specific relief which the pleader conceives himself entitled to, he prays for "such other general relief as shall be just." The defendant is entitled to the full measure of relief which the

law and the facts entitle him to. The fact that the proof defeats his claim to some of the specific relief prayed for is no reason for denying him such other relief as he is actually entitled to. When a court of equity obtains jurisdiction of a controversy, it proceeds to a final determination of all the matters involved in that controversy. 1 Pomeroy's Equity Jurisprudence, p. 181. Moreover, the object of this action is to determine the exact nature and extent of the defendant's adverse claims to the land; and liens and incumbrances are included in that category by the express language of the statute governing this form of action. Section 5904 et seq., Rev. Codes 1899, as amended by chapter 5, p. 9, Laws 1901. It is the duty of the court, therefore, in this form of action to determine the nature and extent of the tax purchaser's lien if his claim of title fails. Section 1273, Rev. Codes 1895, above referred to, goes further and makes it the duty of the court, not only to establish the lien in such a case, but also to render a judgment upon which an execution may issue to enforce the lien. Russell v. Hudson, 28 Kan. 99. Even if the statute did not require such a judgment, we can see no good reason for compelling the parties to resort to a separate suit to foreclose the lien when all the material issues in such a case have been determined in the present action.

Respondent contends that the township road taxes which were included in the amount for which the land was sold are void, because made by percentage, and not levied in a specific amount. This tax was levied by the board of town supervisors in 1895, and was based on the assessment roll of the previous year. Rev. Codes 1895, section 1122. Consequently there was a fixed and certain basis for determining the amount which the percentage levy would yield. It met all the substantial requirements of the law. Fisher v. Betts, 12 N. D. 197, 96 N. W. 132. It appears, however, that the amount properly chargeable against the land as certified to the county auditor by the town clerk was 46 cents too much. In fixing the amount of the lien, this excessive charge should be excluded. The record does not disclose the amount of taxes, exclusive of accrued interest, penalties, and costs for which the sale was made. We have only the amount for which it was offered for sale. We shall therefore include in the new trial to be had of this action, the issues arising on this third defense, involving the sale of 1896 for the taxes of 1895, to the end that the amount of defendant's lien by virtue of having paid the taxes at this abortive sale may be es-

tablished and judgment rendered therefor in case he shall fail to establish title under the sale of 1890 for the taxes of 1889. The amount of all valid taxes for the years 1896 and 1897, which were paid by the defendant subsequent to the sale of 1896, should be included in the lien and interest computed thereon at the rate fixed by the tax law of 1896. The township road taxes for 1896 appear to have been improperly levied in this: That a higher rate of taxation for this purpose was imposed on real estate than on personal property. It appears, however, that the premises were sold for the taxes of 1896 in 1897, and redeemed by the defendant after the sale. If this is the fact, then, for the reasons hereinafter stated in connection with the discussion of the subsequent tax sales, that objection was cured by the sale. In respect to the 1897 tax paid by defendant, if it shall appear that the township authorities illegally exempted the personal property from taxation for township purposes, then that part of the taxes for that year as to which that objection is available is void, unless the payment was by way of redemption from a sale.

The fourth defense is based on a certificate issued December 5th, 1899, on a sale on that date for the taxes of 1898. This certificate shows a sale of one acre of the tract in question. Under section 76, c. 126, p. 285, Laws 1897, the highest bidder for any tract of land was the person who would "pay the total amount of taxes, penalties and costs charged against it * * * for the smallest or least quantity thereof, which may be designated by any sufficient description." This certificate merely recites a sale of one acre, but does not give any description of it, so that the one acre sold can be distinguished and separated from the other 159 acres of the quarter section. For this reason the certificate is void on its face. We know of no way in which the land sold can be identified under the circumstances of this case except by means of the certificate. The sale itself must therefore be declared void.

The fifth defense is a certificate issued December 4, 1900, on a sale made that day for the taxes of 1899. This certificate is for the whole of the land in controversy, is signed by the county auditor, and is in the form prescribed by section 1262, Rev. Codes 1899, except that it bears no seal and omits the words "and seal" from the attestation clause, although the statutory form includes those words. A county auditor, as such, has no official seal. He has charge of the county seal, and is authorized to affix it in authenti-

cation of the corporate acts of the county where such authentication is required. Section 1897, Rev. Codes 1899. A tax sale and execution of a tax deed are not corporate acts of the county. It is clear that the mention of an auditor's seal was an inadvertence, because it is an impossibility to comply with that part of the form. The statute requires only "substantial" adherence to the prescribed form. We are satisfied that the disregard of this feature of the prescribed form is not a departure in matter of substance.

The objection that the township road tax included in this sale was levied by percentage, instead of specific amounts, is not well taken, for the reasons hereinbefore stated in discussing the tax of 1895. The record shows that the town board levied the road tax on real estate only. The town record in evidence is worded in somewhat obscure language. It might mean that no taxpayer in the town had any personal property above the amount exempted from taxation. Or it might be inferred therefrom that the town board was of the opinion that personal property was exempt from taxation for road purposes. We shall take the construction most favorable to the respondent, and assume that the road taxes were levied on real property only, and that personal property subject to taxation was improperly exempted therefrom. Although the objection on the ground of nonuniformity would be fatal to the tax if seasonably made, it is not available after a sale has taken place. Section 1263, Rev. Codes 1899, which section is part of the law under which the tax proceedings were had which culminated in the certificate in question, reads as follows: "Such certificates shall in all cases be prima facie evidence that all requirements of law with respect to the sale have been duly complied with, and that the grantee named therein is entitled to a deed therefor after the time of redemption has expired. And no sale shall be set aside or held invalid unless the party objecting to the same shall prove either that the property upon which the tax was levied was not subject to taxation, or that the taxes were paid prior to such sale, or that notice of such sale as required by law was not given; or that the piece or parcel of land was not offered at said sale to the bidder who would pay the amount for which the piece or parcel was to be sold, in which cases, but in no other, the court may set aside the sale or reduce the amount of taxes upon such land, rendering judgment accordingly." This is the first time this court has been called upon to construe and apply this section of the

present revenue law. There was a similar provision in the revenue law of 1890 (section 72, c. 132, p. 404, Laws 1890). Some of the tax sales involved in Sweigle v. Gates, 9 N. D. 538, 84 N. W. 481, were governed by the 1890 law, but the provision now in question was evidently not called to the attention of the court. That provision is not mentioned in the opinion. In Mercantile Co. v. Nelson Co., 14 N. D. 407, 104 N. W. 528, the section in question was applied without discussion. The effect of this section is to cure any error or irregularity in the tax proceedings preceding the sale except those defects mentioned, if the validity of the taxes is not attacked before sale. It is therefore in the nature of a limitation statute as well as a curative law. It is well settled that the legislature has power by a subsequent statute to cure irregularities in a tax proceeding where the thing wanting or omitted is something the necessity for which might have been dispensed with or declared to be immaterial by prior statutes. Saranac Land Co. v. Roberts, 177 U. S. 330, 20 Sup. Ct. 642, 44 L. Ed. 786; Ensign v. Barse, 107 N. Y. 338, 14 N. E. 400, 15 N. E. 401; Shattuck v. Smith, 6 N. D. 56, 69 N. W. 5; Dever v. Cornwall, 10 N. D. 123, 86 N. W. 227; Wells Co. v. McHenry Co., 7 N. D. 256, 74 N. W. 241. Of course no curative statute passed after an attempted sale could render such sale effective as a transfer of any title. The legislature having the power by a subsequent statute to cure or declare immaterial any nonobservance of purely statutory requirements, it is self-evident that this power could be exercised by inserting the curative provisions in the same act which authorized and governed the proceedings. The section, however, goes further. It provides in effect that the sale shall exclude every objection to the proceedings except those irregularities specifically enumerated. Taken literally, it could not be sustained to its full extent, because there are objections not mentioned which the legislature could not bar, as for instance, the want of an assessment or the absence of any levy. The provisions of the section must be deemed to be predicated upon the hypothesis that the power and jurisdiction to sell for a tax the particular property affected, has been initiated by some proceeding which is inherently and, under the provisions of the constitution, sufficient to create a tax and fix it as a charge upon the land to be sold.

Speaking in general terms, there must be an assessment and a levy of a tax for which the property to be sold can be constitutional-.

ly held liable. If these are wanting there is no power to sell, and neither the curative nor limitation provisions of the section could have anything upon which to operate. It is objected that the defect in the township tax complained of was beyond the curative power of the legislature, because the method of levying that tax violated that provision of the constitution which requires uniformity in taxation. We shall assume, without expressing any opinion on the point, that it is beyond the power of the legislature to cast the burden of taxation for the repair and improvement of the township roads upon real property alone. We are, nevertheless, of the opinion that under section 1263, the sale is not invalidated by this defect in the township tax. This presents what we have termed the limitation feature of section 1263. The legislature has undoubtedly power to enact limitation laws—to fix a time within which a person must avail himself of the remedies afforded him to protect or enforce his rights, under penalty of being forever barred from asserting them. The primary requisites to the validity of such a law are that some right of the person sought to be barred by it has been invaded or denied for which he has a remedy, and that a reasonable opportunity to avail himself of the remedy is afforded. These conditions existing, it is competent for the legislature to impose upon such person the duty to avail himself of his remedies within the given time and to declare that his failure to do so shall operate as a bar to any relief. People v. Turner, 117 N. Y. 227, 22 N. E. 1022, 15 Am. St. Rep. 498; Id., 145 N. Y. 451, 40 N. E. 400; Turner v. People, 168 U. S. 90, 18 Sup. Ct. 38, 42 L. Ed. 392; Saranac Land Co. v. Roberts, 177 U. S. 330, 20 Sup. Ct. 42, 44 L. Ed. 786; Ensign v. Barse, 107 N. Y. 338, 14 N. E. 400, 15 N. E. 401; Knox v. Cleveland, 13 Wis. 245.

The statute in question complies with all these requisites. The land in question was taxable, and the statute governing taxation, of which ignorance excuses no one, informed every person interested in the land that it would be taxed; and, if the taxes were not paid within a given period, the property would be sold. The statute further informed every interested person when and where every official act in the course of the proceeding from the assessment to the sale would take place, and the evidence of each of these acts was made a matter of public record open to the inspection of all persons at designated places. The propriety of the

assessment is subject to review before the town board of review, and again before the county board of equalization. The amount of taxes imposed on each tract and the various purposes for which the same were levied are spread out in detail upon the tax list which remains open to inspection at the county treasurer's office from the 1st of November succeeding the levy until November of the next year, and is then transferred to the county auditor's office a month before the sale takes place. During all this time the board of county commissioners are required to meet at designated times at the county seat, and are authorized to hear and allow petitions for abatement of taxes for any cause. The time and place of sale are fixed by law, and three weeks' public notice thereof is given by publication of the list of lands to be sold, and the taxes they will be sold for. Instead of, or in addition to, applying to the board of county commissioners for relief from any objectionable tax, the taxpayer has ample remedies under our liberal Code of Civil Procedure to obtain such relief by civil action or appropriate special proceedings; and he is allowed more than a year in which to avail himself of them. The legislature had the power, and we think it was clearly the intention to declare by this section of the law that the neglect of the taxpayer to resort to an appropriate remedy for relief from a prejudicial irregularity in the tax proceedings before the sale, should be a bar to any relief, unless the defect complained of consists of one or more of those objections specified in the section or is some other defect which it is beyond the power of the legislature to remedy by a curative statute or bar by a statute of limitations which is not based on adverse possession.

Under such a taxing system as ours there is no necessity for service of notice personally or by publication. The law itself is ample notice to comply with the requirements of due process. As said in People v. Turner, 117 N. Y. 227, 237, 22 N. E. 1022, 1025, 15 Am. St. Rep. 498: "A manifest difference exists between the modes of making assessments for local improvements and those providing for annual taxation, and much more reason exists why a formal notice should be given in one case than the other. In one case they are transitory and occasional; and in the other, regular, fixed, and of annual occurrence, known to all the people. In one case they become public only when proceedings are instituted and may escape the notice of the landowner; in the other they occur every

year and are as constant in their occurrence as the changes of the seasons. * * * The taxpayer must be presumed to have knowledge of the provisions of public statutes; and, as the time and place for the meetings of the board of supervisors are fixed by the statute, and occur at stated periods, we must presume that the legislature intended such notice of the time and place for hearing of dissatisfied taxpayers to be adequate notice of the opportunity to be heard." On the same point. see Hagar v. Reclamation District, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; Kentucky R. R. Tax Cases, 115 U. S. 321, 6 Sup. Ct. 57, 29 L. Ed. 414; State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663. Also cases cited in 27 Am. & Eng. Enc. of Law (2d Ed.) p. 707. The law is valid, unless it violates the fourteenth amendment of the federal constitution, which prohibits any state from depriving a citizen of his life, liberty or property without "due process of law." The question is a federal one, because, although the same provision is in our state constitution, it is only copied from and repeats the guaranty found in the fourteenth amendment, and is no broader in its scope than the federal provision. The decisions of the United States Supreme Court are therefore controlling on this question. The point has been repeatedly raised and decided in that court. State R. R. Tax Cases, 92 U. S. 575, 23 L. Ed. 663; Hagar v. Reclamation District, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; Kentucky R. R. Tax Cases, 115 U. S. 321, 6 Sup. Ct. 57, 29 L. Ed. 414; Turner v. People, 168 U. S. 90, 18 Sup. Ct. 38, 42 L. Ed. 392; Saranac Land Co. v. Roberts, 177 U. S. 330, 20 Sup.Ct. 642, 44 L. Ed. 786. Further discussion of this subject will be found in Nind v. Myers, 109 N. W. 335, the decision in which is filed herewith. It is well known that our present law, regulating taxation of real property, was borrowed largely from Minnesota. In that state the delinquent tax list of real property was filed in the office of the clerk of the district court, and served the purpose of a complaint in an action against the respective lands listed. The list, with the accompanying citation, was published, requiring persons interested to file an answer, and litigate in court any alleged defense they might claim to have against the tax; and, in case of default of an answer, judgment was entered against the property for the tax listed. The property was subsequently sold pursuant to the judgment. This procedure was omitted from our tax law, apparently on the theory that, by the provisions of section

1263, the same result would be attained as was effected under the Minnesota law by means of the citation and judgment of the court. It is obvious that it is of no consequence whether the proceedings take the form of a judicial proceeding and judgment, or that the statute declares that certain extrajudicial proceedings shall have the same conclusive effect as a judgment, provided in either case there is notice and reasonable means and opportunity to obtain a judicial hearing and determination of any valid defense, before the defense is barred. Wells County v. McHenry, 7 N. D. 246, 74 N. W. 241, and cases cited supra. It must be borne in mind that these statutory provisions regulating the form and method of procedure in laying and collecting taxes are merely means to an end. The object in view is to insure a fair apportionment of the expenses of government, and to compel the payment of each individual's share. If that end has been accompished, even though by irregular means, the taxpayer has no just cause for complaint, provided he is informed of what his tax is and has the opportunity of paying it before his property is taken from him. To illustrate: A fair assessment is essential to a uniform tax. To insure a just appraisement, the valuations fixed by the assessor must be reviewed by the town board of review and the county board of review, each of which meet at stated times and places, for the purpose of hearing and adjusting grievances. If these boards refuse to grant a hearing, or, having heard, refuse to do justice, an excessive tax will result which will appear as a charge on the tax lists which are made public the following November. The injured party can then demand an abatement of the excessive tax by the board of county commissioners; or, on payment or tender of the amount justly due, obtain by civil action, a cancellation of the excessive part of the tax, and an injunction against the sale. The mere payment or tender of the just amount of taxes due may be sufficient without a civil action to protect his rights. Wilson v. Reasoner, 37 Kan. 665, 16 Pac. 100. So, also, if any part of the aggregate levy is for an unlawful purpose, or in excess of the amount limited by the constitution, or is excessive for any other reason, the same remedies are available. Thirteen months must elapse from the time the tax list becomes public before the sale is made, and the taxpayer has all this time to protect himself by resorting to the court for redress if by reason of nonfeasance or misfeasance on the part of the officers in the tax proceed-

ings an unjust tax has resulted. In short, the entire proceeding is a standing order, of which every property owner has notice, to appear and show cause why the resulting tax is not or will not be fair and just. The taxpayer is not wholly dependent on his knowledge of the law for notice of the proceedings. To further insure that his attention shall be attracted to them, numerous notices are provided for. Notice of the completing of the assessment, and of the meeting of the town, village or city board of review, is given by posting a general notice. Rev. Codes 1899, section 1218. A statement showing the levy for state, county, school and township, village or city purposes, with the amount levied for each is published in each county, and notice of the completion of the tax list is published. Rev. Codes 1899, section 1233. Notice of the sale is also published. Rev. Codes 1899, section 1259.

Besides all these precautions, the proceedings are so familiar to all, and are given so much publicity, both officially and unofficially, and knowledge of their nature and of the time and place they occur, and of where the public record of them is kept, is so general and widespread that ignorance of them or of their effect is excusable only in very rare cases. Under such circumstances can the taxpayer be heard to say that he owes no obedience to so fair and liberal a law? What constitutional right does such a law invade or deny? In what respect is it arbitrary or unjust? This road tax was only a small fractional part of the aggregate taxes for which the sale was made. The other tax levies were valid. There was, therefore, jurisdiction to sell the land for taxes, and, if the road tax was void, it was merely an error in the exercise of jurisdiction, resulting in a sale for more than was legally due; but this error in the exercise of jurisdiction is a wholly different thing from an entire absence of jurisdiction. In the absence of legislation, such as is found in section 1263, the error would be fatal to the sale, as this court has repeatedly held. Sweigle v. Gates, 9 N. D. 538, 84 N. W. 481; Dever v. Cornwall, 10 N .D. 123, 86 N. W. 227, and other cases. If jurisdiction exists, but is erroneously exercised, the error may be remedied by a curative or limitation statute, subject to those restrictions hereinbefore referred to. See on this point the opinion in Nind v. Myers (filed herewith) 109 N. W. 335.

It is finally urged that the notice of this sale was insufficient, in substance, because it did not show, as the statute required (Rev.

Codes 1899, section 1259), the amount of taxes and penalties due for which the land would be sold. The statute does not prescribe any specific form for this notice. It merely requires a notice to be published which shall "contain a notice of all lands on which the taxes of the preceding year [mentioning it] remain unpaid, will be sold at the time and place of sale, shall be the first Tuesday in December, following, and said notice must contain a list of the lands to be sold and the amount of taxes and penalty due, to which amount the auditor shall add to each description of land so advertised the sum of 20 cents for each description of town lot, the sum of 10 cents, to defray the expenses of advertising," etc. The notice in question commenced with a general notice signed by the auditor, and stating, in substance, that "the taxes for the year 1899, on the following list of real property have become delinquent, and that the property will be sold to pay said taxes, together with interest and cost of advertising as provided by law," etc. Then follows the list of lands to be sold, arranged by townships. The land in question was listed in the same form as the other lands, in the following form:

Township 130, range 64.

| In whose name assessed and description | Section | Amount of sale. |
|---|---|---|
| Philip Dawson    N. W. ¼ | 32 | 15 60 |

It is claimed that by reason of the words, "Amount of sale," over the right hand column, the list does not show the amount of taxes due. We think this is hypercritical. Any person of common understanding reading the list in connection with the general notice at the top could not fail to understand and know that the figures in the right hand column state the amount for which the land was to be offered for sale. No other meaning could be reasonably given to it, even if the person reading it were ignorant of the provisions of the statute which requires the publication. We have not overlooked the case of Mather v. Darst, 13 S. D. 75, 82 N. W. 407, where the Supreme Court of our sister state held insufficient a notice in somewhat similar language. The objections to the certificate set forth in the sixth defense issued on the sale of 1901 are of the same character as those urged against the certificate for the sale of 1900. We hold that both these certificates, and the sales evidenced by them, are valid. The case will be remanded

for a new trial on the issues presented by the first and third defenses, involving the sales of 1890 and 1896, respectively. In the event that the defendant shall establish that he is entitled to a deed under the sale of 1890 for the taxes of 1889, judgment will be entered awarding him the title and possession of the property. If the defendant shall not be able to establish title under said sale of 1890, then the trial court will render judgment, awarding the title to the plaintiff, subject to the rights of defendant under the certificates on the sales of 1900 and 1901, respectively, and his lien for taxes paid by reason of the sale of 1896. In the event of a judgment for plaintiff on the question of title such judgment should show the reasons why the tax sales or taxes, as the case may be, are void, in compliance with section 1270, Rev. Codes 1899.

The judgment is reversed and cause remanded for further proceedings in accordance with this opinion. The appellant will recover the taxable costs and disbursements of this appeal.

MORGAN, C. J., concurs.

YOUNG, J. (dissenting in part). As to the several questions considered and decided in this case I do not agree with my associates in their conclusions as to those numbered 3, 4, 9 and 13, in the syllabus, and will state my views in reference thereto as briefly as may be.

(4) I do not think that a new trial should be ordered as to the first defense to give the defendant another opportunity to establish, if he can, by common-law proof, an estate or interest in the premises under the 1890 sale, which he failed to establish by the void tax deed. In my opinion there is no just ground for this course. The defendant had the choice of introducing common-law proof or of relying upon the presumption of regularity which arises from the introduction of a tax deed, regular upon its fact. He chose to rely upon the deed. It is clear that any evidence which he can produce at the new trial was available when he made his election as to the kind of proof he would rest his case upon. If, therefore, we assume, and it is an unwarranted assumption, that he erred in electing to rely upon the deed, it was nothing more than an error of judgment which is a common incident of all trials, and is never held to present a ground for a new trial. Bacon v. Mitchell, 14 N. D. 454, 106 N. W. 129. If the rule were otherwise, there would be no end to lawsuits. I cannot see how the court or opposing coun-

sel were in any way chargeable with the error if it was one. The record shows that when the defendant offered the deed in evidence, the following proceedings occurred: "Plaintiff's counsel: 'Objected to as incompetent, not in the form required by law.' The Court: 'In what particular is it not in form?' The objection is very general.' Plaintiff's counsel: 'I am not relying principally upon it. I am hardly ready to specify now.' The Court: 'If you expect to make a point on it, you must call the court's attention to the particular defect.' Plaintiff's counsel: 'I guess I won't put in any objection then. I am not certain that there is any defect in the form of the deed.' Defendant's counsel: 'You withdraw the objection?' Plaintiff's counsel: 'I prefer to let the objection stand as it is without withdrawing it.'" It is apparent that plaintiff's counsel had not discovered the defect in the deed when he made his objection. He did not consent to its introduction, however. On the contrary, he persisted in his objection that the deed was not in proper form. But that is not important for the burden was upon the defendant to know at his peril whether the deed had any evidentiary force, and his error in judgment is not ground for a new trial. The chief end in view in the enactment of section 5630, Rev. Codes 1899, which governs the proceedings in this case, was to secure a speedy and final determination of cases without the necessity of a new trial. True, the section contains a saving clause giving this court the power to grant a new trial when it deems that course necessary to the accomplishment of justice. This is a power which has been heretofore, and should be at all times, cautiously exercised. It is manifest that, upon a statutory motion for a new trial, the facts above stated would be insufficient, and in my view, an equally strong ground should be required to move the court to grant a new trial in actions tried under section 5630, in view of its manifest purpose. Any other course largely nullifies the chief purpose of this section. I am also of opinion that, if the case is to go back for a new trial, even-handed justice requires that the landowner be given the same consideration as the tax purchaser. He should be permitted to offer further evidence, if he so elects, to show that the sales which the trial court found were void, but which the majority hold upon the present record are valid, are in fact void, for reasons other than those presented at the former trial. But, as previously stated, the case is not one in which, in my opinion, a new trial can be ordered without doing violence to the spirit and purpose of the statute.

(3)    As to the statement that a tax purchaser, who has terminated the right of redemption, has the same estate right and title as one who has completed his purchase by receiving a tax deed, I express no opinion. As I view it, the record contains no facts which present the question. There are no rights involved which depend upon this question. The defendant in his answer alleges a regular tax sale, the delivery of a tax certificate, the termination of redemption period by notice, and the issuance of the tax deed which we hold is void. If, upon the new trial, he shall prove a valid sale and notice of expiration of redemption, the trial court will so adjudge. Whether in that event, the defendant would have perfect title, and the same and all the rights of one who had taken out a tax deed is a question not in issue. The question is one of some importance, and should not be determined until it arises in a regular way.

(9)    With the general statement that the rights acquired by a purchaser at a tax sale cannot be swept away by subsequent legislation, I fully agree. This court has repeatedly so held, and there is of necessity no division in the authorities upon that question. The point upon which I differ with the majority is in their construction of the statute in reference to which they invoke the prohibition against the impairment of contracts. The two sections of the Revised Codes of 1895, which my associates hold give the purchaser at a void tax sale the right to a judgment and a lien for the amount paid upon the purchase, and for all subsequent payments, and the right of foreclosure, are sections 1273 and 1261, Rev. Codes 1895. Section 1273 makes it the duty of the court to enter judgment against the taxpayer for "the true and just amount of taxes due upon the property," in actions to cancel tax sales and tax deeds, and authorizes the issuance of execution upon such judgments. It makes no reference to a lien in any way. Section 1261 provides for the issuance of certificates to purchasers at tax sales, prescribes the form of the certificate, and further provides that "the purchaser acquires the lien of the tax on the land, and if he subsequently pays the taxes levied on the same, he shall have the same lien for them, and may add them to the amount paid by him in the purchase.  *  *  *"  In my opinion these two sections relate to distinct matters: One to the remedy of a purchaser at a void sale; and the other to the rights of a purchaser at a valid sale, and under a valid certificate. Section 1273, which is a

part of article 12, relating to "Sales Wrongfully Made," contains the promise of the state to the purchaser at a void sale of a judgment for the taxes justly due, which is made enforceable by execution, as a measure of indemnity for the loss of his supposed purchase. Section 1261, which is found in article 9 of the same chapter, relates, not to void sales and the consquences thereof, but to valid sales, and the rights of purchasers at such sales. Under this section the lien of the tax at a valid sale, although the tax itself is discharged by the sale, follows the certificate, and to this lien is added a lien for taxes subsequently paid by the holder of the certificate. It is apparent that section 1261 refers to certificate issued upon valid sales. This view is reinforced by considering the rights and liabilities of the owner. If he does not redeem and the sale is valid, the purchaser will acquire title. If the sale is void and a nullity, title will not pass. He incurs no peril by disregarding a void sale, but not so as to a valid sale. He must redeem from a valid sale, and pay the amount stated in the certificate which includes the tax, interest, penalty and costs of sale, with 15 per cent interest, and all subsequent taxes paid by the purchaser with the same rate of interest. Section 1264.

Some states have statutes which provide that the purchaser acquires a lien when the sale is void, and provides means for its enforcement. Such statutes are necessary, for taxes are not matcers of contract, and "only statutory ,means are to be resorted to for their collection." Croskery v. Busch (Mich.) 74 N. W. 464; Cooley on Taxation (1st Ed.) 300; Eyke v. Lange, 104 Mich. 26, 63 N. W. 535. So, in this state it has been held that a suit in equity in the nature of a suit to foreclose a mortgage will not lie to foreclose a tax lien, the statutory remedy being exclusive. McHenry v. Kidder County, 8 N. D. 413, 79 N. W. 875. See, also, Gage v. Eddy, 186 Ill. 432, 57 N. E. 1030. Such a provision is found in section 28, c. 67, p. 89, Laws 1897, which is a part of the original "Woods Law." That section declares that when a sale under a tax judgment is declared void, the purchaser, who had paid subsequent taxes, shall have a lien thereon for the same, and authorizes its enforcement by action. The statute under consideration contains no such provision. A purchaser at a tax sale buys under the rule caveat emptor. If the sale is valid he has under his certificate a lien for the amount of the tax, interest and penalty, and costs of sale, and also for amounts paid for subse-

quent taxes. Section 1261, supra. If the sale is void, he acquires nothing. A void sale is no sale, and he is, as to all payments, subsequently under a mere volunteer. This court has so held in a number of cases where the sales were set aside for want of a valid assessment, and the same reasons apply to a sale which is set aside for want of a valid levy; for both are equally jurisdictional. Sheets v. Paine, 10 N. D. 107, 86 N. W. 117; Roberts v. Bank, 8 N. D. 504, 79 N. W. 1049; McHenry v. Britt, 9 N. D. 68, 81 N. W. 65. See, also, Barber v. Evans, 27 Minn. 92, 6 N. W. 445. When the sale is valid, the lien acquired by the purchaser may be ripened into title by statutory methods, unless redemption is made; and, in such cases, the statutory remedies are ample and exclusive. When the sale is void, the purchaser acquires no right. Whatever redress he may have for moneys paid out at the void sale, or subsequently, must be found in the statute, and the only remedy given is that contained in section 1273; that is, a judgment enforceable by execution. The question as to nature and extent of the lien of such a judgment need not be discussed. For the reasons stated, I cannot concur in the view, either that the defendant through the void sale acquired the lien of the tax, or that he is entitled to a judgment of foreclosure. The relief to which the defendant is entitled is, in my opinion, entirely different from that awarded him in the majority opinion. The record in this case shows that the defendant purchased the premises at several sales: First, under the 1890 revenue law, then under the 1895 law, and again under the 1897 law. The rights of the purchaser when the sale is set aside are different under each law. As to purchases under the 1890 law, he is entitled to be repaid by the county treasurer the amount paid at the sale and the amount paid as subsequent taxes and costs, with 10 per cent interest. See section 84, c. 132, p. 408, Laws 1890. As to sales under the 1897 law, he has the same redress, except that the interest rate is 7 per cent. See section 88, c. 126, p. 289, Laws 1897; section 1270, Rev. Codes 1899. The sole remedy given in case of void sales under the 1895 law is the judgment authorized by section 1273 of the 1895 Code.

(13) Neither am I able to agree to the construction given to section 1263, Rev. Codes 1899 (section 78, c. 126, p. 286, Laws 1897), or to its application. This section, which is quoted in the majority opinion, provides that no sale shall be set aside unless

the person objecting shall prove certain jurisdictional defects; for instance, that the property was not subject to taxation, or that the taxes were paid, or that notice of sale was not given, etc. It does not designate an illegal levy as one of the grounds upon which a sale may be set aside; but, on the contrary, to the extent of legislative power, it commands that a sale shall not be set aside upon that ground.

Statutes like this are quite common in revenue laws. The manifest purpose of such statutes is to dispense with strict obedience to the requirements of the law of which they are a part. This statute takes the form of a mandate to the courts commanding them to give effect to proceedings which have been taken under it, and to disregard all violations other than those enumerated. In this case the township tax, included in the consolidated tax for which the land was sold, was levied upon real estate alone. The levy had no warrant of law to support it, and could not have been authorized by the legislature. It was entirely void, and beyond the healing power of curative laws. Cooley on Constitutional Limitations, 747. The command of the legislature that a sale based upon such a levy shall not be set aside is therefore wholly ineffective. The will of the legislature should be given effect by the courts whenever it can be done constitutionally. But, when the legislature assumes power which it does not possess, as it frequently does, in these so-called "curative laws," the effect of its declaration must be measured, not by the language of the command, but by the limitations upon its power. In this case it is conceded in the majority opinion, as I understand it, that the levy in question was beyond the. curative power of the legislature. Notwithstanding this, the conclusion is reached, and under the authority of the same section, that the sales which were based upon these void and incurable levies are valid, or at least are not open to question after the sale. This conclusion, as I understand the opinion, rests upon the assumption that section 1263 is also a statute of limitation, limiting the period of time in which the landowner may invoke the aid of the courts to protect his property against any and all unlawful invasion by the taxing power, and as against any and all defects in its exercise, jurisdictional, or otherwise, which occur prior to the sale, except those which are particularly enumerated in the section. It will be noted that this section does not except either a void levy or a void assessment, and both are jurisdictional and

fatal, and incurable defects. The theory of the majority opinion apparently is that while such defects are not curable, judicial relief against them may be ·and must be had before sale, and that relief is barred unless invoked before the sale. In other words, it is held that under section 1263, a limitation against the taxpayer's remedy in court begins to run when the illegal assessment or levy is made; and if not invoked before the sale, the bar is complete. In my judgment, the statute will not bear this construction. I find no language in the section which suggests that it is a statute of limitations. Its language is wholly curative. It contains no statement in reference to the time when actions shall be brought. It merely declares that when actions are brought to set aside sales, they shall not be set aside except upon the grounds enumerated. That it was not the legislative intent to impose a limitation upon actions by this section is also otherwise apparent; for a limitation is in fact placed upon actions by the landowner in the same act and in the succeeding section (section 1264) which provides that "any person having or claiming title * * * may commence and maintain an action either in law or in equity at any time before or after the issuing of a tax certificate, and within three years after the execution and delivery of a deed * * * to test the validity of the tax sale, tax certificate, or tax deed * * * and if no action is commenced within the time aforesaid, such tax deed shall vest in the grantee a fee-simple title to the land. * * *" This section fixed a three-year period, in which the landowner may apply to the courts for relief, and it fixes a definite time when the statute commences to run. It is well settled that, prior to the sale, or at least not until a sale is threatened, courts of equity will not interfere at the suit of an individual taxpayer to enjoin the acts of the taxing officers, even though they are illegal. He must wait until his property rights are invaded. A contemplated future injury will not be sufficient to sustain his action. Considerations of public policy compel an adherence to this rule. If this were not so, and every taxpayer could invoke the aid of the courts whenever the taxing officers act without or in excess of their authority, or commit an illegal act, the entire time of the courts would be consumed to the exclusion of other legitimate business, and the collection of revenues necessary to conduct village, city, township, county and state government would be seriously impeded. For these reasons, it has been held that the aid of the

courts will be denied to the taxpayer until his property rights are invaded, or are immediately threatened. See Miller v. Grandy, 13 Mich. 540; Youngblood v. Sexton, 32 Mich. 406, 20 Am. Rep. 654; Jull v. Town of Fox Lake, 28 Wis. 583; Mayor v. Meserole, 26 Wend. (N.Y.) 132. Also the recent case of Torgrinson v. School District, 14 N. D. 10, 103 N. W. 414, where we approved and applied this rule, and cases there cited.

It is not claimed by counsel for the original owner that the provisions of the revenue law, when observed by the officers charged with their execution do not accord to property owners due process of law. It is properly assumed that, if the taxing officers regularly pursue their authority, and the landowner fails to redeem, his title will be divested. When taxing officers act within their authority and jurisdiction, he is bound by their acts, and in such cases his remedies are those contained in the revenue law itself. But the case is entirely different when the taxing officers proceed in disregard of the statute, and without authority, for their illegal and unauthorized acts do not bind him; and, for the purpose of preventing the taking of his property through such unlawful methods, he is entitled to his day in court. But, as previously stated, his application for relief will not be entertained until his property rights are threatened or invaded by a sale. It is apparent, therefore, that to hold that the landowner must in every case bring his action before sale, is in effect to deny a remedy; for as already stated, the courts will not entertain his application for relief, at least until a sale is threatened. The present holding is at variance with the settled construction of such statutes. There is no distinction in legal effect between a void levy and a void assessment. and this court recently, in harmony with the views of other courts, in the case of Scott Barrett Merc. Co. v. Nelson County, 14 N. D. 407, 104 N. W. 528, said that "the want of an assessment could not be cured or barred by the sale." This is, I believe, a correct statement of the law.

The majority further contend that the officer making the sale had jurisdiction to sell the land that the inclusion of the illegal road tax with the legal taxes was merely an error in exercising his jurisdiction, and is therefore a mere irregularity. It is said: "The void road tax was only a small fractional part of the aggregate taxes for which the sale was made. The other tax levies were valid. There was, therefore, jurisdiction to sell the land for taxes, and if

the road tax was void, it was merely an error in the exercise of the jurisdiction, resulting in a sale for more than was legally due; but this error in the exercise of jurisdiction is a wholly different thing from an absence of jurisdiction." I cannot assent to this reasoning. It erroneously assumes that the officer who has authority to sell is clothed with general authority, and has a discretion, and that, whether he pursues his statutory authority or not, so long as he makes a sale, he is acting with authority. This is erroneous. His authority is special. He has only the authority given him by the statute. He can only sell at the time, place and manner provided in the statutes and after giving the notice required by the statute and for taxes legally due. Where he departs from his statutory authority, his acts are void; for, unless his acts are authorized, they have no more validity than the acts of a stranger. This has been the settled law of this country ever since the decision of Williams v. Peyton, 4 Wheat. (U. S.) 76, 4 L. Ed. 518, which involved a tax deed, and in which Chief Justice Marshall used this language: "As the collector has no general authority to sell the lands at his discretion for the nonpayment of the direct tax, but a special power to sell in the particular cases described in the act, those cases must exist, or his power does not arise. It is a naked power, not coupled with an interest, and, in all such cases, the law requires that every prerequisite to the exercise of that power must precede its exercise; that the agent must pursue the power or his act will not be sustained by it." No authority exists for selling land for taxes which are not legally due, and a sale for taxes, a part of which is illegal, is without authority of law, and is void. Such is the view of the text-writers (Blackwell on Tax Titles, 160; Cooley on Taxation, 296 (2d Ed.) 497; Burrough on Tax'n, 301; Desty, Taxation, 972), and this court has so held. (Lee v. Crawford, 10 N. D. 483, 88 N. W. 97). And our opinion in the case just cited is in harmony with the opinion of the courts generally. See People v. Hagadorn, 104 N. Y. 516, 10 N. E. 891; Poth v. Mayor, 151 N. Y. 16, 45 N. E. 372; Buell v. Irwin, 24 Mich. 145; Silsbee v. Stockle, 44 Mich. 561, 7 N. W. 160, 367; Hardenburgh v. Kidd, 10 Cal. 402; Treadwell v. Patterson, 51 Cal. 637; Drew v. Davis, 10 Vt. 506, 33 Am. Dec. 213; Gamble v. Witty, 55 Miss. 26-35; McLaughlin v. Thompson, 55 Ill. 249; Riverside Co. v. Howell, 113 Ill. 256, 262; Gage v. Pumpelly, 115 U. S. 454, 6 Sup. Ct. 136, 29 L. Ed. 449; Kemper v. McClelland's Est., 19 Ohio, 324; Elwell v.

Shaw, 1 Greenl. (Me.) 339; Huse v. Merriam, 2 Greenl. (Me.) 375; Wallingford v. Fiske, 24 Me. 386; Worthen v. Badgett, 32 Ark. 496; Parr v. Matthews, 50 Ark. 390, 8 S. W. 22; Kimball v. Ballard, 19 Wis. 601, 88 Am. Dec. 705; Barden v. Supervisors, 33 Wis. 447, 14 Am. Rep. 762; Baker v. Supervisors, 39 Wis. 444. See, also, the opinion of the Circuit Court of Appeals, Eighth Circuit, in Alexander v. Gordon, 101 Fed. 91, 41 C. C. A. 228, an Arkansas case, in which it was held that such a sale as the one under consideration was void; "that the sale itself was not only irregular, but void, because it was made for the collection of a tax in excess of the amount which the county court was authorized by the statutes to levy, and because the officer who made the sale was without jurisdiction or authórity to effect it." And it was also held that the sale was not protected by the two-year statute of limitations. See, also, Cooley on Const. Lim. (5th Ed.) 645.

The foregoing cases fully sustain the doctrine laid down by Judge Cooley, that "A sale for anything more than is lawfully chargeable is a sale without jurisdiction, and therefore void." Under this rule, it must be held that the sale in question in this case was void for jurisdictional reasons, and, as such, the statute could have no curative effect. Neither could it bar the original owner from subsequently asserting in court the invalidity of the levy, when necessary to protect his property rights. In what I have said, I do not wish to be understood as assenting to the view that a statute of limitations will in any case validate a void paper claim like a void tax certificate, or that even a void tax deed will in any case bar the right of the true owner, who is in possession and in the enjoyment of all his rights, from urging the invalidity of a sale for jurisdictional reasons. I think the rule is quite well settled to the contrary. This question is involved in Nind v. Myers, 109 N. W. 335, now pending in this court, and I will present a statement of my views in that case.

The trial court held that the several tax sales and tax deeds set up in defendant's answer were void; and, in my opinion, the judgment in this respect should be affirmed, and relief should be granted to the defendant for payments made at the sale, and for taxes subsequently paid, according to the provisions of the law in force when the sales were made, as hereinbefore stated.